[Decided April 3, 1894.]

## AVERY v. JOB.

[S. C. 36 Pac. 293.]

1. MUNICIPAL CORPORATIONS — LIABILITY ON BONDS — INJUNCTION.— It is a general rule that when the legislature authorizes a municipality to contract a debt, and issue bonds therefor, it intended to authorize the payment of such bonds out of the money raised by general taxation, unless there is something in the act itself, or some general limitation upon the power of taxation, which repels such an inference, and, although a special tax or fund may be provided, the bondholder's remedy is not limited to such tax or fund, unless it is provided that the bonds shall not be paid in any other way.   The bonds, when issued, become a debt of the municipality for which it is primarily liable, and for any balance due thereon after the application of the special fund the holders are entitled to payment out of the general fund.   In such cases property owners who are taxed for general municipal purposes may enjoin the improper issuance of the bonds, as their burden of taxation will be affected.

2. MUNICIPAL CORPORATIONS — INJUNCTION — FRAUD.— Although the purchase or erection of certain public improvements may have been by the municipal charter confided to the judgment and discretion of the city council, yet equity will, at the suit of taxpayers, restrain the council from proceeding in the matter when it is not exercising its discretion,

but is arbitrarily wasting the public funds, since such conduct is a gross and manifest abuse of power amounting to a legal fraud on the taxpayers.

APPEAL from Benton: J. C. FULLERTON, Judge.

This is a suit brought by certain residents and taxpayers of the city of Corvallis to restrain the mayor, police judge, and members of the common council of said city from purchasing the plant of the Corvallis Water Company, and issuing bonds for the purpose of raising money to pay therefor.    The case, as exhibited by the complaint, is that on the thirteenth day of July, eighteen hundred and ninety-two, the common council duly passed an ordinance providing for a special election to be held on the twenty-ninth day of August, eighteen hundred and ninety-two, for the purpose of voting on the question of issuing bonds for the erection or purchase of waterworks, as provided by subdivision 2 of section 37, and section 182 of the city charter, and designating the places in said city for holding such election, appointing judges and clerks thereof, and also directing the police judge to give ten days' notice in some local newspaper of the places designated for holding the election, and the names of the judges and clerks appointed to conduct the same, and the purpose of said election.    In pursuance of this ordinance the police judge gave the notice as required, and on the day appointed an election was held in the city, resulting in a majority of the votes cast thereat being in favor of the issuance of said bonds.    On the twenty-sixth of December, eighteen hundred and ninety-two, the council passed ordinance number forty-five, accepting a proposition of the Corvallis Water Company, made December twelfth, eighteen hundred and ninety-two, offering to sell to the city of Corvallis its waterworks, fixtures, and appurtenances thereto belonging, for

XXV. OR.—33.

the sum of twenty-eight thousand dollars, and contracted with the said company to purchase and pay for the same, and directed the police judge to enter into a contract to that effect, stipulating therein that the twenty-eight thousand dollars should be paid out of the proceeds of the bonds so voted, as soon as the money could be realized thereon.

On the ninth of January, eighteen hundred and ninety-three, an ordinance was passed declaring the result of the special election, and providing for the issuance of the bonds of the city in the aggregate sum of fifty thousand dollars, for the purpose of erecting or purchasing waterworks, to be executed by the mayor and police judge, and to be dated April first, eighteen hundred and ninety-three, payable twenty years from the date thereof, and to bear interest at the rate of six per cent per annum, payable semi-annually in United States gold coin, both interest and principal payable at Corvallis; also directing the police judge to advertise for proposals to purchase said bonds, and to sell and deliver the same. In pursuance of this ordinance, notice was given that proposals would be received up to, and opened on, the tenth day of March, eighteen hundred and ninety-three, for the purchase of the bonds. On the thirteenth day of March the council proceeded to consider the bids which were made in response to said notice, and by ordinance accepted the proposal of Lamprecht Bros. & Co., and directed the police judge to enter into a contract in writing with them for the sale of such bonds; but before the purchase of the waterworks was consummated, or the bonds delivered, this suit was commenced. The complaint alleges that the plant of the Corvallis Water Company, proposed to be purchased by the city, is not worth more than ten thousand dollars, is inadequate, faulty in construction, and wholly insufficient in every

respect to supply the said city and its inhabitants with good, pure, and wholesome water; that the price agreed to be paid therefor is eighteen thousand dollars in excess of its value, and that the proposed outlay, if consummated, will be an unreasonable and flagrant misappropriation of the city's resources; that the proceedings of the council in reference to the issuance of the bonds are void and of no effect, because neither the ordinance providing for the special election, nor the notice thereof, states or submits to the voters the question as to the amount of bonds to be issued, or the character or probable cost of the works the council contemplated erecting or purchasing. To this complaint a general demurrer was sustained, and defendants refusing to plead further, a decree was rendered in favor of plaintiffs, from which this appeal is taken.　　　　AFFIRMED.

*Mr. Reuben S. Strahan* ( *Messrs. John W. Whalley, Martin L. Pipes,* and *J. R. Bryson* on the brief), for Appellants.

The plaintiffs' right to maintain the suit is denied. They show no interest whatever in the controversy. It is true they allege they are taxpayers in the city and own collectively about one hundred thousand dollars' worth of property in the city subject to taxation; but, if the city charter does not authorize any tax on property to pay said bonds or the interest accruing thereon, then it is conceded by plaintiffs that they have no standing in court, and the demurrer must be sustained. And this point is not as plaintiffs assume, that plaintiffs have not capacity to sue. It is that they do not show any interest in the subject matter of the suit, no present or prospective injury to themselves. This point is raised by a general demurrer.

A brief examination of the charter will put this question at rest. The first subdivision of section 37 of

the charter empowers the council to assess, levy, and collect taxes for general municipal purposes each year upon all property, both real and personal, which is taxable by law for state and county purposes. The terms "general municipal purposes," import no more than taxation to carry on city government, that is to pay the necessary fees and salary of officers, and to discharge the necessary expenses usual in the ordinary administration of the affairs of the city. It is evident those terms do not confer any power to levy taxes to meet the extraordinary expenses which may be incurred by the council in erecting or purchasing waterworks, electric-light plant, and the laying of suitable sewers, for the reason that other provisions of the charter prescribe the method of raising money to meet such expenses.

After empowering the city council to establish water rates and to provide for the monthly payment in advance, of such rates, the charter continues: "All moneys collected from water rates shall be kept separate from all other funds, and shall be known as the water fund, and shall only be used to pay the costs incurred by the city in operating such waterworks and extending and improving the same, and to pay the semi-annual interest on the bonds issued under this act, and all the surplus collected from water rates shall go to create a sinking fund with which to pay the principal on such bonds at maturity." Here, then, is a separate fund specially set apart to pay the interest on these bonds as it accrues and to create a sinking fund for their payment at maturity. This is the only provision made by the charter for their payment, and we insist that the court must assume that it is adequate, as it doubtless is, and also exclusive. We do not believe the court can or will try the question of the sufficiency of this fund at this time. It was the duty of the legislature to make adequate provision for the

payment and the redemption of the bonds which it
authorized the city to issue, and it must be assumed
that it has discharged that duty. The court cannot,
therefore, do what the plaintiffs ask — adjudge that the
special fund created and set apart for the payment of
these bonds is insufficient. The most that can be said on
this subject at this time is, that the fund provided is pre-
sumptively adequate, but if the future should determine
that it is insufficient, it will become the duty of the legis-
lature to make further provision. It can be no part of
the court's duty in this preliminary way, to anticipate
the future, and by such anticipation destroy the utility
of the act. The plaintiff's contention is, therefore, born
of their fears for the future, not the present — that is, that
the legislature may some time "in the future" find it nec-
essary to levy a tax to aid the fund which the present
act provides; but it can hardly be contended that a court
of equity can make such groundless fears a foundation
upon which to rest its jurisdiction.

Our contention upon this point may be further illus-
trated by the maxim, " *Expressio unius est exclusio alterius.*"
The payment of the bonds is provided for in a particular
way. This excludes every other. The fund to be used is
derived from a particular source. This of itself excludes
every other: *U. S.* v. *Macon Co.* 99 U. S. 582; McFarland's
Estate, 26 Pac. 185; *Smith* v. *Randall,* 6 Cal. 47, 65 Am.
Dec. 475; *Pico* v. *Sunol,* 6 Cal. 294; *Canfield* v. *Tobias,* 21
Cal. 349; *Englund* v. *Lewis,* 25 Cal. 340; *Boyce* v. *California
Stage Co.* 25 Cal. 475; *Patton* v. *Placer Co.* 30 Cal. 175–178.

The objection that the waterworks are inadequate to
supply the inhabitants with water and that the same are
not worth the price agreed upon are equally unsound.
Those are matters left by the charter to the discretion of
the common council. That body must determine whether
the waterworks are of a character and capacity sufficient

to furnish the city and inhabitants thereof with an abundance of good, pure, and wholesome water, etc.:    2 Dillon, Mun. Corp. § 94; *Railroad Co.* v. *Evansville,* 15 Ind. 395; *Kelly* v. *Milwaukee,* 18 Wis. 83; *Slack* v. *Railroad Co.* 13 B. Mon. 1; *Bridgeport* v. *Railroad Co.* 15 Conn. 475; *Harrison* v. *Baltimore,* 1 Gill (Md.), 264; *Cincinnati* v. *Gwyne,* 10 Ohio, 192; *Markle* v. *Akron,* 14 Ohio, 586.

Where a municipal corporation is entrusted with the execution of a power and is not confined to any particular mode, but has a discretion in the choice of means, a plain case of abuse must be shown, resulting in an injury to the petitioner, to warrant an injunction against the corporation:    *Page* v. *St. Louis,* 20 Mo. 136; *Colton* v. *Hanchett,* 13 Ill. 615; *Bush* v. *Carbondale,* 78 Ill. 74; *Mayor of Baltimore* v. *Gill,* 31 Md. 375; *Holland* v. *Baltimore,* 11 Md. 186, 59 Am. Dec. 195; *Dodd* v. *Hartford,* 25 Conn. 232; *Shelton* v. *School Dist.* 25 Conn. 224; *Lockwood* v. *St. Louis,* 24 Mo. 20; *Deane* v. *Todd,* 22 Mo. 90; *Mayor* v. *Meserole,* 26 Wend. 132; *U. P. Co.* v. *Ryan,* 2 Wyo. 408; *U. P. Co.* v. *Cheyenne,* 113 U. S. 516; *Poillon* v. *Brooklyn,* 101 N. Y. 132; *Couldson* v. *Portland,* 1 Deady, 481.

In respect to the legislative functions of a municipal body the courts are bound to presume that they will exercise any discretion with which they are clothed properly, and that they had sufficient reasons for doing an act the result of such discretion:    *Railroad Company* v. *Mayor, New York,* 1 Hilton, 562; *Des Moines Gas Co.* v. *Des Moines,* 44 Iowa, 508, 24 Am. Rep. 756.    Thus, for example, if a city has power to grade streets, the courts will not inquire into the necessity of the exercise of it or the refusal to exercise it, nor whether a particular grade adopted, or a particular mode of executing the grade is judicious: *Hovey* v. *Mayo,* 43 Me. 322; *Benjamin* v. *Wheeler,* 8 Gray, 409–413; *Richmond* v. *McGirr,* 78 Ind. 192.    So, if a city has power to build a market-house, the courts cannot

inquire into the size and fitness of the building for the object intended: *Spaulding* v. *Lowell*, 23 Pick. 71–80. So where a city has power to lease real estate at a reasonable rent, the council is to determine what is reasonable, and their discretion in the absence of fraud cannot be judicially revised: *Shank* v. *Mayor*, 69 N. Y. 444. So, in the absence of fraud, the court refused to interfere by injunction with the action of the city council in agreeing to rent a room for city purposes for twenty years and to pay for the same in advance: *Moses* v. *Risdon*, 46 Iowa, 251.

*Mr. John Kelsay* (*Messrs. M. S. Woodcock* and *Wm. Yates* on the brief), for Respondents.

Opinion by Mr. Justice Bean.

1. It is first insisted, in support of the demurrer, that under the charter the loan evidenced by the bonds issued for the purpose of raising money to erect or purchase waterworks is not a debt or obligation of the city for the payment of which money raised by taxation can be used, and therefore the plaintiffs do not show any interest in the subject matter of the suit, or any injury to themselves, present or prospective, from the contemplated issue of bonds or the purchase of the waterworks. This argument is based upon that provision of the charter, which, after authorizing the council to construct or purchase, keep, conduct, and maintain waterworks, to furnish the city and its inhabitants with pure, wholesome water, and for such purpose to issue and dispose of the bonds of the city, the par value of which shall not exceed fifty thousand dollars, whereby the city shall be held and considered in substance and effect to undertake and promise to pay to the bearer of each of said bonds, at the expiration of such time as the council shall prescribe, not exceeding twenty years, the sum named therein, with

interest at the rate of six per cent per annum, and to establish and collect water rates, further provides that "all moneys collected from water rates shall be kept separate from all other funds, and shall be known as the 'water fund,' and shall be used only to pay the costs incurred by the city in operating such waterworks, and extending and improving the same, and to pay the semiannual interest on the bonds issued under this act, and all the surplus collected from the water rates shall go to create a sinking fund with which to pay the principal of such bonds at maturity." The argument is that by this provision of the charter the money collected for water rates is made a special fund for the payment of the interest on the bonds it accrues, and for the creation of a sinking fund for their payment at maturity, and that it is the only fund out of which such bonds or the interest thereon can be paid. As a general rule, when the legislature authorizes a municipality to contract a debt, and issue bonds therefor, it is to be inferred that it intended to authorize the payment of such bonds out of the money raised by general taxation, unless there is something in the act itself, or some general limitation upon the power of taxation, which repels such an inference; and, although a special tax or fund may be provided, the bondholders' remedy is not limited to such tax or fund, unless it is provided that the bonds shall not be paid in any other way. The bonds, when issued, become a debt of the corporation for which it is primarily liable, and for any balance due thereon after the application of the special fund the holders are entitled to payment out of the general fund of the corporation. In *United States* v. *County of Clark*, 96 U. S. 211, the county had subscribed for stock of a railroad company, and issued its bonds in payment therefor pursuant to the law which authorized the levy of a special tax to pay them, "not exceeding

one-twentieth of one per cent upon the assessed value of taxable property for each year," but contained no provision that only the fund so derived should be applied to their payment. On an application for a writ of mandamus by the holders of the bonds to compel the clerk of the county to draw a warrant on the county treasurer, payable from the general fund of the county, for the balance due on the bonds after the application of the proceeds of a special tax, the court held that the bonds were debts of the county as fully as any other liability, the special tax being merely an additional provision for their payment, and for any balance remaining due thereon of either principal or interest, after the application of the proceeds of the special tax, the holders were entitled to payment out of the general fund of the county.

In *Lowell* v. *Boston,* 111 Mass. 460, 15 Am. Rep. 39, the supreme court of Massachusetts, in speaking of bonds which the city of Boston was authorized to issue by an act of the legislature to enable it to raise funds to be loaned to individuals to aid them in rebuilding that portion of the city destroyed by fire in November, eighteen hundred and seventy-two, which act established a sinking fund for the payment of such bonds, to consist of all premiums on the sale of bonds above their par value, of all receipts of interest on loans made over and above the interest paid on such bonds, and of all payments of the loans made under the authority of the act, said: "The issue of the bonds by the city, whatever provision may be made for their redemption, involves the possible and not improbable consequence of a necessity to provide for their payment by the city. The right to incur the obligation implies the right to raise money by taxation for payment of the bonds; or, what is equivalent, the right to levy a tax for the purposes for which the fund is to be raised by means of the bonds so authorized." To the

same purport is *State* v. *Milwaukee*, 25 Wis. 122; *Parsons* v. *City of Charleston*, 1 Hughes, 282, Fed. Cas. No. 10, 774; *Knox County Court* v. *United States*, 109 U. S. 229, 3 Sup. Ct. Rep. 131; *United States* v. *New Orleans*, 98 U. S. 381. "Indeed," as was said by Mr. Justice Field in the case last cited, "it is always to be assumed, in the absence of clear restrictive provisions, that when the legislature grants to a city the power to create a debt, it intends that the city shall pay it, and that payment shall not be left to its caprice or pleasure. When, therefore, power to contract a debt is conferred, it must be held that a corresponding power of providing for its payment is also conferred. The latter is implied in the grant of the former, and such implication cannot be overcome except by express words excluding it."

Now, in this case there are no express words in the charter excluding the implication that the bonds to be issued for waterworks may be paid out of the general fund of the city; on the contrary, it clearly appears that the provision of the charter making water rates applicable to the payment of the bonds was only intended as an additional provision for the payment of the proposed new debt, and not as a denial to the bondholders of the right to resort to the ordinary revenues from which payment of the debts of the city is made. It does not, in express terms, or by implication, import that they were thereby to be precluded from looking to the city for the payment of the debt. By the terms of the act authorizing the bonds it is expressly provided that the city shall "be held and considered in substance and effect to undertake and promise, in consideration of the premises, to pay to the bearer of each of the said bonds, at the expiration of such time as the council shall prescribe, not exceeding twenty years, the sum named therein, in gold coin of the United States, together with interest thereon in like gold

coin at the rate of six per cent per annum, payable half yearly as provided in said coupons." The plain import of this language is that the city is to become primarily liable for the payment of the bonds issued by it, and nothing in the language of the charter in any respect affects this primary liability. The bonds, when issued will create a debt of the city as fully as any other liability, for the payment of which the property of its inhabitants may be subject to taxation. By its charter the city is authorized and empowered to assess and collect taxes for general municipal purposes, not to exceed one half of one per cent each year, upon all the property within its limits, and the fund thus raised may be used for the payment of interest or principal upon the bonds proposed to be issued, if the money collected from water rates should prove insufficient; for nothing is more important to the welfare of a municipality than a regular supply of good, wholesome water for its inhabitants, which can best be secured through the instrumentality of well equipped waterworks, and hence the construction and operation of such works is held to be a general municipal purpose: *Smith* v. *Nashville*, 88 Tenn. 464, 7 L. R. A. 469, 12 S. W. 924; *Metcalf* v. *City of Seattle*, 1 Wash. 297, 25 Pac. 1010. It seems to us, therefore, that the contemplated purchase of the waterworks, and the issue of bonds by the city of Corvallis, involved the possibility, if not the probability, of providing for their payment by taxation, and therefore plaintiffs are interested in and have a right to maintain this suit. The case of *United States* v. *County of Macon*, 99 U. S. 582, relied upon by the appellant, is not in point, for in that case, by the act authorizing the debt, and the general statute in force at the time, the power of taxation for its payment was, in the opinion of the court, limited to the special tax designated in the act, and such

other taxes applicable to the subject as then were, or might thereafter by general or special acts, be permitted, and hence the court refused to compel the county by mandamus to levy a tax for the payment of such bonds beyond the amount so authorized.

2. Having concluded that the plaintiffs are proper parties, we now pass to the question whether, under the admitted facts, the plaintiffs are entitled to the relief prayed for. The object of this suit is to prevent the purchase by the city of the plant of the Corvallis Water Company, and, as one reason therefor, the complaint alleges, and the demurrer admits, that such plant is not worth to exceed the sum of ten thousand dollars, is inadequate in capacity, faulty in construction, and wholly insufficient in every respect to supply the city and its inhabitants with water; and that to pay twenty-eight thousand dollars therefor, as contemplated by the city, will be an unreasonable and flagrant waste of eighteen thousand dollars of the city's resources, and a great damage to the city, to these plaintiffs, and other taxpayers. The defendants having seen fit to rest their case upon the facts as stated in the complaint, the only question is whether, under these facts, the plaintiffs are entitled to have the contemplated purchase of the waterworks perpetually enjoined. If so, the complaint states a cause of suit, and the decree must be affirmed, whether the objections to the validity of the various proceedings of the council looking to the sale of bonds by the city are well taken or not. The contention for defendant is, that the erection or purchase of waterworks is by the charter left entirely to the discretion of the council, and that the courts have no jurisdiction or authority to interfere with such discretion. No principle of equity jurisprudence is, perhaps, better established than that when the officers of a municipal corporation are clothed with a

discretionery power, and are acting within the scope of such power, a court of equity will not sit in review of their proceedings, or interfere by injunction, at the suit of a private citizen, unless fraud is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. The fact that the court would have exercised the discretion in a different manner will not warrant it in interfering: 2 High on Injunction, § 1240; *Spring Valley Water Works* v. *City of San Francisco*, 82 Cal. 286, 16 Am. St. Rep. 116, 6 L. R. A. 756, 22 Pac. 910, 1046.

Now, in this case the matter of erecting or purchasing waterworks is, by the charter of Corvallis, committed to the judgment and discretion of the council, and whether they act wisely or unwisely in so doing, it is not the province of a court of equity to interfere, so long as they exercise such judgment or discretion in good faith; but the gist of the complaint upon this subject is that they have not exercised their judgment and discretion in such manner, but that arbitrarily, and without regard to the rights of the city or its taxpayers, they have agreed and are about to pay twenty-eight thousand dollars for a plant worth but little more than one third that amount, and wholly inadequate and insufficient for the purpose for which it is intended. Regarding this as true — being admitted by the demurrer — it evidently amounts to a legal fraud, and is such a manifest and gross abuse of power as will be prevented by an injunction at the instance of a taxpayer. Although the acts of the council are not charged to have been fraudulent, and the term fraud is not used in the complaint, facts are stated and alleged which show such a gross and manifest abuse of discretion, and disregard for the rights of the taxpayer, as amount to the same thing. Fraud is not a fact, but a conclusion of law from facts, and the term may not be

used at all in the pleadings if facts are averred which show fraud as a conclusion of law: Bliss, Code Pleading, § 211; *Hess* v. *Young*, 50 Ind. 379. The officers of a municipality in many respects sustain the relation of trustees to the citizens and taxpayers, and, while they are necessarily invested with large discretionary powers in the conduct of the affairs of the corporation, with which the courts will not interfere, it is too clear for argument that they cannot, in total disregard of the rights of the citizens and taxpayers, waste and misapply the public funds, as the complaint alleges is contemplated in this case. By their demurrer the defendants admit that they intend and contemplate, as the representatives and trustees of the city, to pay twenty-eight thousand dollars out of the public funds for property worth not to exceed ten thousand dollars, and wholly inadequate and insufficient for the purpose for which it is designed, and this admission shows such an unwarranted invasion of the rights of the taxpayer as will be prevented by an injunction at the instance of such taxpayer. This being so, the complaint states a cause of suit, and the demurrer was properly overruled, whether the objection to the validity of the bonds is sound or not, and we do not, therefore, deem it necessary to consider such objection at this time. For the reasons stated, the decree of the court below is affirmed.

Affirmed.