Argued June 7; affirmed June 20, 1944

# TILLAMOOK PEOPLES' UTILITY DISTRICT
## ET AL. *v.* COATES

(149 P. (2d) 558)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Francis E. Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, on the brief), for appellant.

*H. T. Botts,* of Tillamook, for respondents.

BAILEY, C. J.   This suit was instituted by Tillamook Peoples' Utility District, a municipal corporation, and E. E. Allen, Jr., John Schild, A. D. Thompson and M. R. Terry, residents and taxpayers of that district, to enjoin W. Thomas Coates, county clerk of Tillamook county, from submitting to the voters of Tillamook Peoples' Utility District at the November, 1944, election or any other election, the question of the approval or rejection by such voters of ordinance No. 4 of that district, and for a declaratory judgment to the

effect that ordinance No. 4 is not a proper subject of referendum.

The complaint alleges that Tillamook Peoples' Utility District is a duly organized and existing utility district under the constitution and laws of the state of Oregon and located in Tillamook county, Oregon; that at a duly and regularly called election held on November 5, 1940, the voters of that district authorized the issuance and sale of bonds by the district in the amount of $750,000, "for the purpose of acquiring, either by purchase and construction, or by construction, the necessary plant, works, and other property for the development, transmission, and distribution of electric energy"; and that thereafter, on June 12, 1943, the board of directors of that district duly adopted ordinance No. 4, providing for the issuance and sale of bonds of the district in the amount above specified, for the purpose of acquiring an electric utility system.

Plaintiffs further aver that thereafter, sometime in July, 1943, there were presented to the defendant county clerk "eighteen purported petitions denominated 'Petitions for Referendum', addressed to defendant as county clerk and being substantially in the form set out in section 81-2101, O. C. L. A., whereby the signers" of those petitions "purported to order that said ordinance No. 4 of plaintiff district be referred to the people of said district for their approval or rejection at the November, 1944, general election"; that the defendant accepted and filed such petitions over the objection of the plaintiff district; that by reason of such filing the question of approval or rejection of ordinance No. 4 may be submitted to the voters of the district, unless restrained by the court; and that the threat of the defendant to submit the ordinance

to the voters has rendered uncertain the sale of the bonds of the district.

"If said matter is so submitted by defendant" to the voters of the district, the plaintiffs state, Tillamook county under the law will be required to mail to each voter of the district a pamphlet containing a printed copy of ordinance No. 4, "and the expense required for that will be a large sum, probably $1,000.00 and upward and thereby the taxes on the property of plaintiffs and of other taxpayers in said county will be materially increased."

To that complaint the defendant county clerk filed an answer, in which he admitted all the material allegations of the complaint and by way of affirmative answer alleged the filing, over the objection of the plaintiff district, of the referendum petitions above mentioned. The defendant further alleged that he "has no personal interest in the matters alleged in plaintiffs' complaint, but desires only to perform his duty in accordance with the law"; and that he "does not know what course to follow and therefore alleges that this court should determine the issues involved, the rights of the parties hereto and the course to be followed by the defendant." The prayer of the defendant is that the court "declare the rights, status and other legal relationship of the respective parties hereto" and grant such other and further relief as may be proper.

Before the county clerk filed his answer, John Jenck filed a petition for leave to intervene, in which petition it is stated that Jenck is a resident, taxpayer and legal voter of the utility district and is one of the circulators of the referendum petitions mentioned in the complaint, and that he has an interest in the matter in litigation. Accompanying the petition for leave to

intervene and attached to it as an exhibit was a copy of the "complaint in intervention" which Jenck asked permission to file. The court permitted Jenck to intervene and to file his proposed complaint in intervention.

In that complaint the intervenor reiterates the statements set forth in his petition to intervene, and asserts that he has a right "to intervene in said suit, and either unite with the defendant in resisting the claims of the plaintiffs, or in the event the defendant refuses to appear and answer the complaint of the plaintiffs, to demand that the county clerk carry out his duties and place said referendum measure upon the official ballot in the next general election to be held in November, 1944." In the prayer of the complaint in intervention the intervenor asks that the plaintiffs' suit be dismissed, and that the court enter a decree directing and commanding the defendant to refer the measure to the voters of the utility district.

To the complaint in intervention the plaintiffs filed an answer, in which they reasserted all the allegations of their original complaint and denied all the allegations "contained in intervenor's complaint herein, except as the same conform to the allegations of plaintiffs' original complaint."

After a hearing on the issues of law and fact involved in the case, the court entered a decree enjoining the defendant county clerk from referring the ordinance in question to the voters of the utility district for their approval or rejection. From that decree the intervenor alone has appealed. The defendant county clerk has made no appearance in this court.

Only one assignment of error is set forth in the appellant's brief, to-wit, that the court erred in failing to sustain his demurrer to the complaint. The

demurrer of the intervenor was oral and was interposed by him at the beginning of the trial on the merits. The ground of demurring was that the "plaintiffs do not have legal capacity to bring the suit which was filed, and that the complaint . . . doesn't state facts sufficient to constitute a cause of suit against defendant, Coates; and for the further reason that the court has no jurisdiction in an injunction case brought by individuals against an officer of the state."

The ordinance against which the referendum is directed was designed to effectuate the will of the voters of the district expressed by their vote in approving the $750,000 bond issue. It specified the denomination and form of the bonds, the rate of interest to be paid, maturity dates and other matters common to utility bonds. Such an ordinance is administrative rather than legislative in character. In *Whitbeck v. Funk*, 140 Or. 70, 12 P. (2d) 1019, an attempt was made to refer to the voters of the city of Portland an ordinance enacted by that municipality selecting and designating certain real property for use as a public market and authorizing the purchase thereof and the preparation and execution of a contract. That ordinance was enacted in pursuance of a preceding ordinance which authorized the issuance of public market utility bonds for the construction or acquisition by purchase of a public market utility within the city. The last - mentioned ordinance was declared to be legislative in character and subject to referendum, whereas the first-mentioned ordinance was adjudged to be not the enacting of legislation but the performing of an administrative act.

■ This court in *Monahan v. Funk*, 137 Or. 580, 3 P. (2d) 778, discussed at some length the distinction

between legislative and administrative ordinances of a municipality, and we shall therefore not go into the matter to any great extent in this instance. In that case the charter of the city of Portland authorized the council of that city to issue and dispose of bonds in an amount not exceeding $300,000, for the purpose of acquiring real property for an incinerating plant. The city passed an ordinance in accord with the charter, providing for the purchase of real property for the plant. An attempt was made to refer that ordinance to a vote of the electorate. In ruling that the ordinance was not subject to referendum, the court pointed out that it was administrative and not legislative in character, and that the city council was merely executing a law already in existence. In the opinion the court quoted with approval from VII McQuillin on Municipal Corporations, § 351 c, page 6621, the following, which is pertinent to the question now under consideration:

" . . . Executive action evidenced by ordinance or resolution does not subject such action to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The mode of effecting the action is not important. If legislative the law contemplates the people may invoke the referendum. The referendum is usually held 'applicable to all ordinances and resolutions which constitute an exercise of legislative power.' That is, it was designed to be directed against 'supposed evils of legislation alone.' 'To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. * * *' "

During oral argument we understood counsel for the appellant to concede that the ordinance here in-

volved is administrative rather than legislative in character. For that reason and in view of the decisions hereinabove cited, it is not necessary to pursue that question further.

Article IV, § 1 a, of the Oregon constitution provides in part as follows:

" . . . The initiative and referendum powers reserved to the people by this constitution, are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws".

Section 81-2118, O. C. L. A., prescribes the procedure to be followed by municipalities, except those which have provided a special method, and by districts, in exercising the initiative and referendum powers granted by the above-quoted constitutional provision. The only matters which may be referred, according to the constitution and the statute last cited, are legislative enactments, not the executive or administrative acts of municipalities or districts.

Another statutory provision in regard to this question is found in § 114-232, O. C. L. A., a part of the "peoples' utility district law", reading thus:

"The board of directors shall constitute the legislative body of the district, and shall determine all questions of policy. All legislative acts of the board shall be expressed in written resolutions or ordinances . . . All ordinances, except emergency ordinances, shall be subject to the referendum".

■■ In stating that all ordinances should be subject to the referendum, the legislature contemplated only or-

dinances of a legislative nature, that is, "legislative acts ... expressed in written resolutions or ordinances", and it did not intend to include executive or administrative resolutions or ordinances, of the nature of the one here involved. The name given by the directors of the district to the formal expression of their action, whether "ordinance" or "resolution", does not change the essential nature of their act.

It is asserted by the intervenor that the referendum petitions are in proper form and signed by the requisite number of legal voters of the utility district; and that upon presentation of the petitions to the county clerk it became the duty of that officer to accept and file the same and to place the referendum measure on the official ballot for the general election to be held in November, 1944.

The intervenor also contends that inasmuch as the plaintiffs have not alleged that they will sustain any special damage to either property or civil rights not suffered by the public at large, they are not entitled to maintain this suit to enjoin the county clerk from referring the ordinance to the voters of the utility district; and that the state of Oregon alone, in its sovereign capacity, has authority to maintain such a suit. In support of that contention the following decisions are relied upon by the intervenor: *State ex rel. v. Lord*, 28 Or. 498, 43 P. 471, 31 L. R. A. 473; *State ex rel. v. Metschan*, 32 Or. 372, 46 P. 791, 53 P. 1071, 41 L. R. A. 692; *Friendly v. Olcott*, 61 Or. 580, 123 P. 53; *Bellarts v. Cleeton*, 65 Or. 269, 132 P. 961; and *Libby v. Olcott*, 66 Or. 124, 134 P. 13. All those cases, except *Bellarts v. Cleeton*, were suits against state officers and in general they may be said to sustain the intervenor's assertion that a private citizen can not maintain a suit to enjoin

a state officer from performing duties imposed upon him by law, unless such private citizen alleges and proves some special damage to himself not suffered by the public at large. Yet the ruling announced in those decisions was not followed in the later case of *Jory v. Martin,* 153 Or. 278, 56 P. (2d) 1093, wherein it was held that a mere taxpayer and resident of this state could maintain a suit to enjoin the Honorable Charles H. Martin from receiving or being paid "for his services as governor of Oregon any sum in excess of $1,500 per year." See also, in this connection, *McKinney v. Watson,* 74 Or. 220, 145 P. 266.

We are not here concerned, however, with the right of a private citizen and taxpayer to maintain an injunction suit against a state officer. In the suit before us the defendant is not an officer of the state, but of Tillamook county. Moreover, one of the plaintiffs in the case is a utility district, a municipal or *quasi*-municipal corporation, and the clerk's action in referring the ordinance to the voters would affect the interests of that plaintiff materially and in a manner not common to the public at large. The utility district would be hindered and delayed in selling and disposing of its bonds pending the outcome of the referendum election.

■ The right of a private taxpayer to maintain a suit to enjoin a county or municipal officer from misapplying or wasting public funds and thereby increasing his burden of taxation has been upheld by a long line of decisions of this court, among them: *White v. Commissioners,* 13 Or. 317, 10 P. 484, 57 Am. Rep. 20; *Sherman v. Bellows,* 24 Or. 553, 34 P. 549; *Avery v. Job,* 25 Or. 512, 36 P. 293; *Ward v. Klamath County,* 108 Or. 574, 218 P. 927; *Priest v. James,* 125 Or. 72, 265 P. 1092;

*Childs v. Marion County et al.,* 163 Or. 411, 97 P. (2d) 955.

■■ Inasmuch as the ordinance here involved was not subject to referendum, the expense incident to submitting it to the voters of the utility district would constitute a misapplication and waste of the public funds of the county. The plaintiffs herein were proper parties to institute this suit to prevent such misapplication and waste.

The decree appealed from is affirmed.