Argued and submitted May 7, affirmed October 29, 1985

## HERITAGE ENTERPRISES et al,
*Petitioner on review,*

*v.*

## CITY OF CORVALLIS,
*Respondent on review.*

(84-050; CA A33812; SC S31498)

708 P2d 601

Allen L. Johnson, of Sullivan, Josselson, Johnson & Kloos, Eugene, argued the cause and filed the brief for petitioner on review.

Richard D. Rodeman, Corvallis, argued the cause and filed the brief for respondent on review.

Before Peterson, Chief Justice, and Lent, Campbell, Roberts, Carson, and Jones, Justices.

PETERSON, C. J.

## PETERSON, C. J.

Petitioner Heritage Enterprises (Heritage) and Oregon State University jointly applied to the City of Corvallis for annexation of 345 acres of land inside the city's acknowledged urban growth boundary and adjacent to the city limits. The city council determined that the proposal satisfied the applicable state and local legal requirements, including the applicable land use policies and standards, and ordered the matter placed on the May 15, 1984, ballot, pursuant to Section 88 of the city charter.[1] The measure was voted down.

Heritage sought review in the Land Use Board of Appeals (LUBA), asserting, *inter alia,* that the city council should not have submitted the proposal to the voters.[2] LUBA dismissed because the May, 1984, vote was not a "land use decision." LUBA held that the reviewable land use decision was the city council's decision that the annexation proposal complied with the applicable laws and therefore was eligible for placement on the ballot.

The Court of Appeals affirmed LUBA. 71 Or App 581, 693 P2d 651 (1984). Heritage petitioned for review. We accepted review to determine whether the voters' rejection of the referred measure at the polls was a final land use decision reviewable by LUBA under ORS chapter 197. Under the facts in this case, we hold that it was not.

The pertinent statutes are ORS 197.015(10), 197.825(2)(a), and 197.175(1). ORS 197.015(10) describes what a land use decision "includes."[3] It provides:

---

[1] Section 88 of the Corvallis City Charter provides:

"Unless mandated by state law, annexation, delayed or otherwise, to the City of Corvallis may only be approved by a prior majority vote among the electorate."

[2] In the petition for review that Heritage filed with LUBA, it asserted:

"Petitioner Heritage Enterprises seeks review of the May 15, 1984 decision of the voters of Corvallis rejecting the proposed annexation of approximately 344 acres of land bordering the city (the OSU/Heritage annexation). * * *.

"Petitioner seeks reversal of that decision, or in the alternative, a finding that the decision is ineffective and that prior City Planning Commission and City Council approval of the annexation are the only approvals necessary."

[3] Defining a term by what it "includes" may create ambiguity. The use of "includes" may imply that the definition is not limited to the matters "included." *See State Farm Fire & Cas. v. Reuter,* 299 Or 155, 161-62 n 7, 700 P2d 236, 240 n 7 (1985).

" 'Land use decision':

"(a)  Includes:

"(A)  A *final* decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)  The goals;

"(ii)  A comprehensive plan provision;

"(iii)  A land use regulation; or

"(iv)  A new land use regulation; or

"(B)  A *final* decision or determination of a state agency other than the commission with respect to which the agency is required to apply the goals.

"(b)  Does not include a ministerial decision of a local government made under clear and objective standards contained in an acknowledged comprehensive plan or land use regulation and for which no right to a hearing is provided by the local government under ORS 215.402 to 215.438 or 227.160 to 227.185." (Emphasis added.)

ORS 197.825(2)(a) concerns exhaustion of remedies:

"(2)  The jurisdiction of the board:

"(a)  Is limited to those cases in which the petitioner has exhausted all remedies available by right before petitioning the board for review."

ORS 197.175(1) in part deals with annexation in a land use context and provides:

"(1)  Cities and counties shall exercise their planning and zoning responsibilities, including, but not limited to, a city or special district boundary change which shall mean the annexation of unincorporated territory by a city, the incorporation of a new city and the formation or change of organization of or annexation to any special district authorized by ORS 198.705 to 198.955, 199.410 to 199.519 or 451.010 to 451.600, in accordance with ORS 197.005 to 197.430 and 197.610 to 197.850 and the goals approved under ORS 197.005 to 197.430 and 197.610 to 197.850. * * *."

The parties apparently agree that the city council's decision concerns the application of the city's comprehensive plan and the land use statutes. The determinative question is whether (a) the council's decision to call an annexation

election, or (b) the outcome of the election itself, is a "land use decision" under ORS 197.015(10).

In the present case, the city exercised its planning responsibilities when it determined that a proposed annexation would be allowed under its comprehensive plan and referred the measure to the local electorate. This decision concerned the "application of * * * [a] comprehensive plan provision." ORS 197.015(10)(a)(A)(ii). It was the last such decision in the sequence of decisions culminating in the rejection of the proposed annexation at the polls.

There are situations in which the process of decision-making is divided between decisionmakers, *see* *West Side Sanitary Dist. v. Health Div.*, 289 Or 417, 614 P2d 1151 (1980), so that one decisionmaker makes an initial determination and another makes a subsequent, related decision. In such cases, the question arises whether review may be sought of each decision independently, or whether persons aggrieved by the initial decision must await the subsequent decision to obtain judicial or quasi-judicial review.

■ The present case involves a city council and the local electorate. The council made the initial determination of compliance of the proposed annexation with the city's comprehensive plan. The city charter assigned to the voters the decision whether to annex. Under this scheme, the voters are not called upon to make a decision involving the application of "a comprehensive plan provision" or the other provisions listed in ORS 197.015(10)(a). Indeed, the referendum cannot be used for "administrative" but only for "legislative" decisions, *see, e.g., Tillamook People's Utility District v. Coates.* 174 Or 476, 149 P2d 558 (1944). For the purpose of LUBA jurisdiction, we conclude that the legislature intended that the city council's decision would be the final "land use decision."

■■ The separate decision of the electorate whether to annex, as opposed to the determination whether the proposed annexation would comply with the comprehensive plan, was not a "land use decision" within the meaning of ORS chapter 197. The question referred to the voters was not whether the proposal *could be* adopted under the applicable land use law, but whether this proposal *should be* adopted at that time. The city council, not the voters, made the final determination of compliance with the comprehensive plan and land use laws.

The city council, in referring the measure, decided that the proposed annexation was permissible but not required, under the city's comprehensive plan. *See* ORS 197.752.[4]

In its petition for review Heritage asserts that this is a paradoxical result. It argues:

> "Contrary to clear legislative intent, sound principles of appellate review and separation of powers, the decision requires LUBA and the courts to step into the middle of local land use proceedings. It assumes, unrealistically, that successful applicants for annexation will appeal favorable city council decisions in midstream, at great expense and political risk, even though a favorable vote might render the appeal unnecessary.
>
> "* * * * *.
>
> "The Court of Appeals decision perpetuates a characteristic Catch-22 of Oregon land use: A petitioner must either appeal a decision that is not final or one that hasn't been exhausted. Worse yet, has to appeal when he is winning."

Heritage contends that the legislature amended the definition of land use decision in 1981 so that LUBA review could encompass decisions made by the electorate through the initiative and referendum process. Or Laws 1981, ch 748, § 1(10). Heritage argues that the change in the definition of a land use decision from decisions of the "governing body" to decisions of a "local government" embodies this intent. We do not exclude the possibility that the electorate might be a "local government" within the meaning of ORS 197.015(10). Nor do we disagree with Heritage's assertion that the outcome of an election on an initiated or referred measure enacted by the electorate may be found by a court to be unlawful.

Any rule, whether enacted by the people through the initiative or referendum process, or by their elected representatives, can be challenged for violating superior laws, either local, statutory or constitutional. The result, if such a violation exists, would be invalidation of the law enacted. Heritage seeks something quite different. It claims that a

---

[4] Here, the city council ordered the question placed on the ballot pursuant to section 88 of the city charter and Land Development Code section 115, which provides for referral of annexation proposals to the voters. ORS 222.111-222.180 are the statutes relating to city annexation. A vote of the people is not always required. *See* ORS 222.111-222.180, particularly 222.111(3).

particular election outcome — approval of annexation — is mandated irrespective of the vote. Heritage insists that LUBA and the judiciary should review the voters' decision by the same standards that would apply to an agency or a governing board's decision. This is untenable. Elections do not (or should not) occur when the outcome is predetermined. And when the choice is appropriately the voters', that decision normally is not and should not be subject to administrative review.

Heritage cites ORS 197.825(2)(a) and further asserts that it was required to exhaust all remedies before it could appeal. The ORS 197.825(2)(a) phrase—"exhausted all remedies available by right,"—in the context of this case, requires an appealing party first to invoke any remedy available at the local level to obtain the relief the party seeks. Insofar as Heritage is concerned, it exhausted all remedies when it sought, unsuccessfully, to have the city council order the annexation without an election. If Heritage is correct in its claim that the city council erred in submitting the annexation to the electorate, then assuredly the final decision was the city council decision, not the decision of the voters.

Heritage's invocation of the exhaustion limitation on LUBA's jurisdiction would operate to expand LUBA's jurisdiction. We agree with this assessment by the Court of Appeals:

"* * * ORS 197.825(1) gives LUBA jurisdiction to review all land use decisions by local governments, except as provided in ORS 197.825(2) and (3). In that context, ORS 197.825(2)(a) does no more than state an exception to a general grant of jurisdicition. It does not add to the ORS 197.015(10) definition of what a land use decision is, and it does not purport to give LUBA jurisdiction to review anything that is not a land use decision. Accordingly, if the election here was not a reviewable land use decision for other reasons, ORS 197.825(2)(a) does not make it so simply because it came later in time than the land use decision the city council made." 71 Or App at 584, 693 P2d at 652. (Footnote omitted.)

■ In sum, in annexations involving a two-step process, such as here, the first decision, as here, normally involves the determination whether the proposed annexation is in accordance with the comprehensive plan or goals, ORS 197.175(1).

The decision submitted to the voters in this case, though related to the city council's decision, did not concern "the adoption, amendment or application of * * * the goals, * * * a comprehensive plan provision * * * [or] a land use regulation." ORS 197.015(10). Only the first determination was a "land use decision."

Because we hold that the Corvallis City Council, not the Corvallis electorate, made the final land use decision in this case, we need not reach petitioner's other arguments. Petitioner did not file with LUBA its notice of intent to appeal until after May 15, 1984, too late to challenge the city council's resolution of February 22, 1984. *See* ORS 197.830(7).

The Court of Appeals is affirmed.