Argued and submitted April 24, reversed and remanded with instructions to grant plaintiffs injunctive relief May 11, 1992

## DAN GILE AND ASSOCIATES, INC.,
and David Manuel,
*Appellants,*

*v.*

## Charlotte McIVER,
*Respondent,*

*and*

## Celinda Ann MILLER
and "Citizens for Referendum,"
*Intervenors Below.*

(92-02-10255; CA A74129)

831 P2d 1024

W. Eugene Hallman, Pendleton, argued the cause for appellants. With him on the brief were D. Rahn Hostetter and Mautz Hallman Baum & Hostetter, Pendleton.

William R. Kirby, Enterprise, waived appearance for respondent.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs are the owners of a 24-acre parcel in Wallowa County. They applied for, and the county governing body approved, a zone change for the parcel from exclusive farm use to residential. A referendum petition was subsequently filed to place the governing body's decision before the voters of the county at the May 19, 1992, primary election. Plaintiffs then brought this action for declaratory and injunctive relief, contending that the governing body's action is a quasi-judicial rather than a legislative decision and, as such, is not subject to the referendum process. Plaintiffs asked, *inter alia*, to have the defendant county clerk enjoined "from placing the proposed referendum on the ballot." The court concluded that the decision was legislative and that the election could take place. It relied in part on section 8.010 of the county zoning ordinance, which provides:

> "Revisions to the land use plan, to the text of this ordinance, to the land use plan map and to the zoning map affecting areas more than ten acres in size will be regarded as major amendments to be processed as a legislative action. Small tract zone changes on areas less than ten acres in size adjacent to the proposed zone will be regarded as minor amendments to be processed as quasi-judicial actions."

Plaintiffs appeal, and we reverse.

The shared premise of plaintiffs[1] and the trial court is that only legislative actions are subject to the Oregon constitutional initiative and referendum rights, *see Amalgamated Transit v. Yerkovich*, 24 Or App 221, 545 P2d 1401, *rev den* (1976), and that the determinative question is whether the governing body's action was legislative or quasi-judicial. Plaintiffs and the court looked, in addition to the ordinance provision, to the line of cases beginning with *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973), *disapproved on unrelated grounds, Neuberger v. City of Portland*, 288 Or 155, 603 P2d 771 (1979), *on rehearing* 288 Or 585, 590, 607 P2d 722 (1980). If the question were as plaintiffs pose it, it would not be a close one. There can be no doubt that, under *Fasano* and its progeny, quasi-judicial procedures and decision-making would be required for a zone change

---

[1] The other parties have not appeared in this court.

application involving a single 24-acre parcel in unified owner-ship. *See Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 569 P2d 1063 (1977).

However, as the court pointed out in 1979 in *Neu-berger v. City of Portland, supra,* substantive and procedural zoning law has been supplemented by statutes, the statewide goals and local legislation in the years since *Fasano*, with the effect that the case authority has been of diminishing impor-tance as a source of law governing zoning and other land use decisions. *See* 288 Or at 168-70. The procedures that are relevant to the decision of this case are now comprehensively governed by statute.[2]

ORS 197.175(1) requires cities and counties to carry out their planning and zoning responsibilities in accordance with ORS chapters 196 and 197 and the statewide planning goals. ORS 197.175(2) mandates that local governments enact comprehensive plans and land use regulations and that they apply them in making land use decisions. The zoning decision made here required the amendment or application of a land use regulation, and it was therefore a "land use decision" as defined in ORS 197.015(10)(a). Land use deci-sions are appealable to LUBA and, in turn, to the appellate courts under ORS 197.805 *et seq.* That review process is exclusive, ORS 197.825(1), and the grounds for reversing or remanding a local land use decision are carefully defined and limited in those statutes.

There are some circumstances, *e.g.*, municipal incor-porations and annexations, where the governing body[3] must make initial land use decisions that the proposal complies with applicable land use requirements. Thereafter, under statutes outside ORS chapter 197, the final decision to adopt or reject the proposal is made by voters. *See Heritage Enter-prises v. City of Corvallis*, 300 Or 168, 708 P2d 601 (1985); *1000 Friends of Oregon v. Wasco County Court*, 299 Or 344,

---

[2] We note, however, that, under LUBA's and our interpretations of ORS chapter 197, together with any applicable provisions in ORS 215.402 *et seq*, the procedures and criteria governing this zone change are adjudicative.

[3] If a local government's procedures so provide, final land use decisions may be made by agencies or officers other than the governing body. Our use of that term should not be read to mean otherwise, but is intended only for simplicity of expression.

703 P2d 207 (1985); *Petersen v. Klamath Falls*, 279 Or 249, 566 P2d 1193 (1977). In those situations, as the court explained in *Heritage Enterprises*,

"the voters are not called upon to make a decision involving the application of 'a comprehensive plan provision' or the other provisions listed in ORS 197.015(10)(a). Indeed, the referendum cannot be used for 'administrative' but only for 'legislative' decisions, *see, e.g., Tillamook [P.U.D.] v. Coates*[,] 174 Or 476, 149 P2d 558 (1944). For the purpose of LUBA jurisdiction, we conclude that the legislature intended that the city council's decision would be the final 'land use decision.'[4]

"The separate decision of the electorate whether to annex, as opposed to the determination whether the proposed annexation would comply with the comprehensive plan, was not a 'land use decision' within the meaning of ORS chapter 197. The question referred to the voters was not whether the proposal *could be* adopted under the applicable land use law, but whether this proposal *should be* adopted at that time." 300 Or at 172. (Emphasis in original.)

The annexation and incorporation cases differ in a significant respect from this one. They deal with processes that entail two decisions: A land use decision by the governing body and, assuming that it is affirmative, a later and separate "political" decision by the voters that does not depend on land use requirements. Conversely, this case involves only one decision — whether to allow the zone change — and it is a land use decision under state law. The clear import of the statutory scheme, generally, and *Heritage Enterprises v. City of Corvallis, supra*, specifically, is that that decision cannot be referred. When the only decision to be made is a land use decision, to which specific land use provisions and requirements must be applied, the governing body must, and the electorate cannot, follow the procedures or be confined to the substance of those requirements. *See Heritage Enterprises v. City of Corvallis*, 71 Or App 581, 584-85, 693 P2d 651, *aff'd* 300 Or 168, 708 P2d 601 (1985). In sum, to hold that a land use decision may be referred to the electorate would be the equivalent of holding that it need not be made in compliance with the procedural and substantive requirements of state

---

[4] The specific question presented in *Heritage Enterprises* was whether the result of an annexation election was reviewable by LUBA as a land use decision.

statutes. As structured by those statutes, it is not a "legislative" decision of the kind to which the constitutional initiative and referendum rights apply. *See* n 2, *supra*; *Heritage Enterprises v. City of Corvallis, supra.*

The question that remains is whether section 8.010 of the county ordinance affects that conclusion. Without deciding whether the section purports or was intended to establish a referendum right or to make procedures other than those mandated by state law applicable to this zone change decision, *see* note 2, *supra*, we conclude that state law prevails over anything in section 8.010 that may be inconsistent with it. Although acknowledged[5] comprehensive plans and land use regulations, rather than the *statewide goals*, are applicable to local land use decisions, we have said that state "*statutory* requirement[s] [do] not become inapplicable to counties after acknowledgment." *Newcomer v. Clackamas County*, 92 Or App 174, 186, n 5, 758 P2d 369, *modified on unrelated grounds*, 94 Or App 33, 764 P2d 927 (1988) (emphasis in original); *see also* ORS 215.428; *Flowers v. Klamath County*, 98 Or App 384, 388, 780 P2d 227, *rev den* 308 Or 592 (1989).

The trial court erred by concluding that the zone change was subject to referendum and by allowing the election to proceed. Plaintiffs are entitled to injunctive relief. Because of the proximity of the scheduled election, the precise nature of the relief must be fashioned by the trial court, and it may be addressed to either the cessation of further proceedings on the referendum election or the nullification of its results.

Reversed and remanded with instructions to enter judgment granting plaintiffs appropriate injunctive relief not inconsistent with this opinion.

---

[5] We are not advised whether the county's legislation is currently acknowledged. We assume, for discussion, that it is.