Argued January 25, affirmed March 21, rehearing denied
April 18, 1922.

## EX PARTE KERBY.

(205 Pac. 279.)

**Constitutional Law—Legislative Authority to Propose Amendments not Restricted to Any Section.**

1. The authority given to the legislature by Article XVII, Section 1, Constitution, to propose amendments to the Constitution, is not restricted to amendment or repeal of any section or part thereof, but was properly exercised in repealing Bill of Rights, Article I, Section 37, abolishing capital punishment, which was added to the Constitution in 1914 by amendment proposed and adopted under the initiative power reserved to the people by Article IV, Section 1, Constitution.

**Constitutional Law—Private Right Equally as Effective in One Article as in Another.**

2. Under Bill of Rights, Article I, Section 33, Constitution, providing that this enumeration of rights shall not be construed to impair or deny others retained by the people, a provision in the Constitution does not derive its force from its position in the instrument, and a private right is equally effective when found in one article as in another.

**Constitutional Law—Power to Amend Constitution Includes Power to Repeal Amendment Made.**

3. The power to amend the Constitution includes the power to repeal a provision, and the repeal may be accomplished by express provision proposed by the legislature and ratified by the people.

**Homicide—Constitutional Amendment Restoring Death Penalty and Laws Relating Thereto Valid.**

4. The constitutional amendment of May, 1920, restoring death penalty for murder in the first degree, and Section 1602—2, Or. L., relating thereto, are valid.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. John C. Lane* and *Mr. Charles W. Garland.*

---

3. Repeal of initiated laws, see note in **Ann. Cas.** 1916B, 837.

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Willis S. Moore,* Assistant Attorney General.

McCOURT, J.—This is an appeal from an order and judgment of the Circuit Court denying a petition for the issuance of a writ of *habeas corpus,* directed to L. H. Compton, warden of the State Penitentiary, commanding him to produce Elvie D. Kerby, held and in the custody of the said L. H. Compton, in order that the court might determine whether the imprisonment and restraint of the said Elvie D. Kerby was and is illegal, as alleged in the petition for the writ.

Kerby, in whose behalf this proceeding was instituted, was regularly indicted, tried and convicted of the crime of murder in the first degree, and sentenced to be punished by death: *State* v. *Rathie,* 101 Or. 339 (199 Pac. 169, 200 Pac. 790). Kerby is in the custody of the superintendent of the State Penitentiary, under and by virtue of the warrant and command of the Circuit Court of the State of Oregon for Umatilla County, authorizing and commanding said superintendent to carry into effect and fully execute the aforesaid judgment. The statute provides that the punishment of death must be inflicted by hanging defendant by the neck until he is dead, and must be executed by the superintendent, or one of the wardens of the State Penitentiary, and take place within the enclosure of the penitentiary: Or. L., § 1602—2.

The crime of murder in the first degree was punished by death under the statutes of the territory of Oregon, which statutes were continued in force by the state Constitution adopted by the people of the territory in 1857. The legislature enacted a Criminal

Code in 1864, and therein re-enacted the territorial statute prescribing the death penalty for murder in the first degree, which enactment was a valid exercise of the legislative power under the Constitution: *State* v. *Finch,* 54 Or. 482, 498 (103 Pac. 505); *State* v. *Anderson,* 10 Or. 448.

The death penalty continued as the punishment for murder in the first degree until 1914, when further infliction of that penalty was prohibited by adoption of an amendment to the Constitution, by adding a section to Article I (Bill of Rights) as follows:

"The death penalty shall not be inflicted upon any person under the laws of Oregon. The maximum punishment which may be inflicted shall be life imprisonment."

Thereafter at a special election in May 1920, the Constitution was again amended by expressly repealing the amendatory provision above quoted, and substituting therefor the following:

"The penalty for murder in the first degree shall be death, except when the trial jury shall in its verdict recommend life imprisonment, in which case the penalty shall be life imprisonment."

The crime for which Kerby was convicted was committed after the adoption of the constitutional amendment last mentioned. The Constitution provides the manner in which it may be amended, and in each instance of the adoption of the foregoing amendments, all the essential requirements as to form and procedure in the enactment of such amendments were observed.

The first above amendment was proposed and adopted under the initiative power to propose amendments to the Constitution and to enact or reject the same at the polls independent of the legislative

assembly, reserved to the people in Section 1, Article IV of the Constitution, while the second amendment was proposed by the legislative assembly and submitted to the people for their adoption under and by virtue of Section 1, Article XVII of the Constitution. The petitioner contends that the latter method of amending the Constitution is not as broad in its scope as that first mentioned, and does not extend to amendments designed to affect a surrender of rights reserved in that part of the Constitution designated the Bill of Rights, nor to enlarge limitations upon the state government found therein. Section 1, Article XVII provides:

"Any amendment or amendments to this Constitution may be proposed in either branch of the legislative assembly and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the secretary of state to the people for their approval or rejection, at the next regular general election, except when the legislative assembly shall order a special election for that purpose."

1. The authority thus given the legislature to propose amendments to the Constitution is not confined or restricted to any particular section or part thereof, but extends to every part thereof and to every section in every part thereof, and no provision is found elsewhere in the Constitution that exempts any part or section of the Constitution from the exercise of the legislature of its authority given by the Constitution to propose amendments to that instrument. That the Constitution may be amended by the method provided in Section 1, Article XVII of the Constitution, is settled: *State* v. *Kellaher,* 90 Or. 538 (177 Pac. 944);

*Hawley* v. *Anderson,* 99 Or. 191 (190 Pac. 1097, 195 Pac. 358); *Boyd* v. *Olcott,* 102 Or. 326 (202 Pac. 431).

2. A provision in the Constitution does not derive its force or efficacy from its position in that instrument. A private right reserved by the Constitution is equally as effective when found in one article in the Constitution as in another. The Constitution provides in Section 33, Article I (Bill of Rights):

"This enumeration of rights and privileges shall not be construed to impair or deny others retained by the people."

3. Petitioner argues that the constitutional amendment intended to restore the death penalty as a punishment for crime is something more than a mere amendment; that it repeals a previously existing valid provision of the Bill of Rights of the Constitution, preserving to the individual immunity against the taking or forfeiture of his life as a punishment for crime. It is urged that the power to amend does not include the power to repeal such a provision. It was held in the case of *Hawley* v. *Anderson,* 99 Or. 191 (190 Pac. 1097, 195 Pac. 358), at page 201 of the opinion, that a constitutional amendment,

" * * may amend or repeal a prior constitutional or statute provision in conflict with it, just as one statute may amend or repeal a prior one, if such is its necessary effect or intent."

To the same effect is *State* v. *Langworthy,* 55 Or. 303 (104 Pac. 424, 106 Pac. 336). These cases establish that provisions of the Constitution may be repealed by implication. It follows, necessarily, that a like repeal may be accomplished by an express provision in a constitutional amendment proposed and later ratified and adopted by the people.

In petitioner's brief it is said:

"The most diligent research has failed to show one instance where the state has once asked the citizen to forfeit a natural right, after it had once been placed in the Bill of Rights, except Arkansas and in that instance the court (*Eason* v. *State,* 11 Ark. 481) held that it could not be done."

Most of the state Constitutions have been amended in some respects; usually these amendments have enlarged the powers already vested in the state government. In every such instance there resulted a surrender of powers or rights previously reserved, either in the Bill of Rights or elsewhere in the Constitution. The number of such amendments is large, and the absence of challenge to their validity is a persuasive argument in support of the power to enact them.

In recent years many amendments have been made to our Constitution, whereby the powers of the government, especially those in respect to taxation, have been greatly enlarged. Two sections relating to intoxicating liquors were added to the Bill of Rights, whereby the freedom previously enjoyed by the citizens in respect thereto was materially restricted. These provisions were upheld by this court in the cases of *State* v. *Marastoni,* 85 Or. 37 (165 Pac. 1177); *State* v. *Wilbur,* 85 Or. 565 (166 Pac. 51, 167 Pac. 569).

It may be said that the right to manufacture, import or deal in intoxicating liquors does not inhere in citizenship; neither does immunity from the death penalty, as a punishment for offenses committed against the laws of the state.

Crime has been punished by death in all ages and by nearly all, if not all, governments. The power of

the government to inflict the death penalty has not been denied in England nor in this country, save in a few instances where it was questioned under constitutional provisions similar to the one considered in *State* v. *Finch*, 54 Or. 482, 496 (103 Pac. 505), except in states, if there be any, having constitutional provisions prohibiting the infliction of the death penalty. No denial of that power, nor any declaration concerning the same, is found in any of the famous English Charters and Acts, from which are taken the maxims and principles grouped in the Bills of Rights in all American Constitutions. The conception that the death penalty should not be inflicted as a punishment for crime is one that has taken form since the adoption of most of the state Constitutions. In those states where it has developed to the extent that a majority of the people subscribed to it, statutes have been passed repealing the existing provisions prescribing that penalty. In some of such states a change of sentiment has occurred, with the result that later statutes have been enacted restoring the death penalty. Thus it appears that the idea has not become so crystallized and fixed, that it is appropriate that it be embraced in constitutions as a permanent principle.

Where, as in Oregon, the people have seen fit to enact a prohibition against inflicting the death penalty by amendment to the Constitution, it would be strange indeed, if by that act they had deprived themselves of the power to restore the death penalty by the same method, upon later discovery that the same was required by sound public policy.

Petitioner cites only one authority that has any tendency to support the contention that a provision in the Bill of Rights of a Constitution cannot be

amended, the case of *Eason* v. *State,* 11 Ark. 481. Upon examination that case discloses that the Arkansas Constitution provided that the legislature might by the observation of a prescribed procedure,. amend the Constitution without submitting the proposed amendment to a vote of the people of the state, and the Bill of Rights in that Constitution contained a provision not found in the Oregon Constitution, as follows:

"Everything in this article is excepted out of the general powers of government."

The court held that the clause quoted exempted the provisions in the Bill of Rights from the authority delegated to the legislature to amend the Constitution and reserved the right to make any such amendment to the people themselves, so that the case is in fact an authority in support of the right of the people to adopt such an amendment.

The case is readily distinguished from the instant case, for every proposed amendment to the Oregon Constitution, in order to become effective, must be approved by a majority vote of the people recorded at a state election, and consequently when approved and adopted, such an amendment constitutes a direct expression of the will of the people in respect to the subject embraced by the particular measure, whether the same be proposed by initiative petition or by legislative resolution.

*Eason* v. *State* is reviewed by the author in Jameson on Constitutional Conventions (4 ed.), Sections 551a, 552, 553, 554, 555, wherein it is clearly pointed out that the decision is erroneous and based upon fallacious reasoning, and approval is given to the earlier case of *State* v. *Cox,* 8 Ark. 436, wherein the court said:

"The Constitution, in prescribing the mode of amending that instrument, does not limit the power conferred to any particular portion of it, and except other provisions by declaring them to be amendable. The General Assembly, in amending the Constitution, does not act in the exercise of its ordinary legislative authority, of its general powers; but it possesses and acts in the character and capacity of a convention, and is, *quoad hoc,* a convention, expressing the supreme will of the sovereign people, and is unlimited in its powers save by the Constitution of the United States. Therefore every change in the fundamental law, demanded by the public will for the public good, may be made subject to the limitation above named."

4. In whatever aspect the matter is viewed, it conclusively appears that the claims and contentions of petitioner are not well founded. It is also clear that the constitutional amendment adopted by the people in 1920, restoring the power to inflict the death penalty for murder in the first degree is valid, as are the statutes providing for the execution of such penalty.

The other contentions made by petitioner depend upon establishing the contention which we have rejected, and they fall with it.

The judgment of the Circuit Court is affirmed.

AFFIRMED.   REHEARING DENIED.

BROWN, J., took no part in the consideration of this case.