On appellant's motion for reconsideration filed June 7 and resubmitted In Banc September 7, motion for reconsideration granted; former opinion (128 Or App 109, 875 P2d 476) withdrawn; affirmed November 23, 1994, petition for review allowed February 7, 1995 (320 Or 567)
See later issue Oregon Reports

Janet BOYTANO,
*Appellant,*

*v.*

Elisa FRITZ,
Election Officer of
the City of Klamath Falls,
*Respondent.*

(93-500CV; CA A80515)

886 P2d 31

In Banc*

Phil Studenberg and Charles F. Hinkle for motion.

No appearance by City of Klamath Falls.

LANDAU, J.

Deits, J., dissenting.

---

* Warren and Haselton, JJ., not participating.

**LANDAU, J.**

Plaintiff moves for reconsideration of our decision that her challenge to the legal sufficiency of a proposed initiative measure that would amend the charter of the City of Klamath Falls presents a nonjusticiable controversy. 128 Or App 109, 875 P2d 476 (1994). We allow the motion and withdraw our opinion.

Plaintiff brought this action for declaratory and injunctive relief, requesting that the city's election officer be prevented from placing the following initiative measure on the ballot:

"(a) The City of Klamath Falls, including its Council and elected or appointed officers, shall not make, pass, adopt, or enforce any ordinance, rule, regulation, policy or resolution that extends minority status, affirmative action, quotas, special class status, or any similar concepts, based on homosexuality or which establishes any categorical provision such as 'sexual orientation,' 'sexual preference,' or any similar provision which includes homosexuality.

"(b) City funds shall not be expended to promote homosexuality or express approval of homosexual behavior.

"(c) This Section shall not be construed to deny any Citizen, based on perceived or actual private lawful sexual practices, any City services, licenses, or approvals otherwise due or available.

"(d) This Section shall not be construed to limit public libraries from providing materials for adults which address homosexuality.

"(e) Subsection (a) of this Section shall not nullify or be construed to nullify any city, state, or federal civil rights protections based on race, religion, color, sex, marital status, familial status, national origin, age or disability. Neither shall Subsection (a) be construed to abrogate, abridge, impede, or otherwise diminish the holding, enjoyment, or exercise of any rights guaranteed to Citizens by the Constitution of the State of Oregon or the Constitution of the United States.

"(f) Subsection (a) of this Section shall not be construed to forbid the adoption of provisions prohibiting employment decisions based on factors not directly related to employment decisions. If such a provision is adopted, it is the intent of the People that lawful private sexual behavior, or

rumor, perception, or knowledge of a person's lawful private sexual behavior are factors not directly related to employment. If such a provision is adopted, it is the intent of the People that personal expression, conversation or any other free expression concerning private lawful sexual behavior shall also be considered factors not directly related to employment, unless such actions disrupt the workplace.

"(g)   This Section shall be an explicit and necessary restriction and limitation upon the authority of the Council.

"(h)   It shall be considered that it is the intent of the People in enacting this Section that if any part thereof is held unconstitutional by a court of competent jurisdiction, the remaining parts shall be held in full force and effect. This Section shall be in all parts self-executing."

The trial court entered judgment certifying the measure for the ballot. We reversed, concluding that, because the record did not show that the correct number of signatures had been gathered to place the measure on the ballot or that the sponsors of the measure were even pursuing it, the issue of the proposed measure's legal sufficiency was nonjusticiable.

In her motion for reconsideration, plaintiff argues that, under *Ellis v. Roberts*, 302 Or 6, 17, 725 P2d 886 (1986), an elector who seeks a court ruling that an initiative measure should not be placed on the ballot need not wait until all the required signatures have been gathered and the measure has qualified for the ballot. We agree. Accordingly, we turn to the merits of plaintiff's appeal.

■      The scope of our review concerning the legal sufficiency of proposed initiative measures is limited. In *Foster v. Clark*, 309 Or 464, 469-71, 790 P2d 1 (1990), the Supreme Court said:

"[A] court will not inquire into the substantive validity of a measure—*i.e.,* into the constitutionality, legality or effect of the measure's language—unless and until the measure is passed. To do otherwise would mean that the courts would on occasion be issuing an advisory opinion.

"* * * * *

"Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by Or Const, Art I[,] § 1(5) to be placed on the ballot. This means that a court may inquire into

whether the measure is 'municipal legislation,' because that qualifying language is used in the constitution itself. On the other hand, a court may not inquire into general questions of constitutionality, such as whether the proposed measure, if enacted, would violate some completely different portion of the constitution."

In this case, plaintiff first asserts that the proposed measure is invalid, because it restricts, abridges, and chills the constitutional rights of a class of citizens and because, if enacted, it will unduly burden the right of initiative.

Those arguments plainly raise questions about the constitutionality, legality or effect of the proposed measure, if enacted. Accordingly, they are beyond our scope of pre-enactment review, as articulated in *Foster v. Clark, supra*, 309 Or at 469-71, and we do not address them.

Plaintiff also contends that the proposed measure is not a proper subject of a local initiative election under Article IV, section 1(5), of the Oregon Constitution, which reserves to the citizens of municipalities and districts the referendum powers "as to all local, special and municipal legislation of every character in or for their municipality or district." According to plaintiff, the proposed measure is not "municipal legislation" within the meaning of Article IV, section 1(5), for two reasons. First, plaintiff argues, because ORS 659.165(1) prohibits elections on measures that would grant special rights to, or single out, citizens on the basis of sexual orientation, the subject of the proposed measure in this case—which singles out citizens on the basis of sexual orientation—is not "municipal." Second, plaintiff argues that, apart from ORS 659.165(1), because the state has a strong interest in protecting the civil rights of its citizens, the subject of the proposed measure is not "municipal" within the meaning of Article IV, section 1(5).

Whether correct or not, those are precisely the sort of arguments that are the proper subject of our pre-enactment review. 309 Or at 471.

■     We begin with plaintiff's argument that, because ORS 659.165(1) prohibits elections on the subject of the proposed measure, it is not "municipal" within the meaning of the Oregon Constitution. ORS 659.165 provides:

"(1) A political subdivision of the state may not enact or enforce any charter provision, ordinance, resolution or policy granting special rights, privileges or treatment to any citizen or group of citizens on account of sexual orientation, or enact or enforce any charter provision, ordinance, resolution or policy that singles out citizens or groups of citizens on account of sexual orientation.

"(2) Any person who believes that a political subdivision has enacted or is enforcing a charter provision, ordinance, resolution or policy in violation of this section may bring an action in circuit court to have the charter provision, ordinance, resolution or policy declared invalid, for injunctive relief and for such other relief as the court may consider appropriate. The court shall award reasonable attorney fees and costs to a plaintiff who prevails in an action under this subsection."

According to plaintiff, the statute's prohibition against a city enacting an offending measure means that the city may not even put the matter to a vote of the people. That prohibition, argues plaintiff, demonstrates that the legislature has determined the subject of the proposed measure to be beyond the "municipal" legislation that is the subject of the power of local initiative and referendum under Article IV, section 1(5). We do not agree.

Plaintiff's argument rests on the assumption that, by prohibiting "enactment" of offending measures, ORS 659.165 prohibits submitting such measures to a vote of the people. We find no support in the language of the statute for that assumption.

In construing a statute, we attempt to ascertain the intentions of the legislature, looking first to the text and the context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In viewing the text, we give the words the legislature has used their ordinary meaning, unless doing so would lead to an absurd or unreasonable result. *McKean-Coffman v. Employment Div.*, 312 Or 543, 549, 824 P2d 410, *on recon* 314 Or 645, 842 P2d 380 (1992).

Nothing in the text or the context of ORS 659.165(1) suggests that local elections are to be prohibited. The topic of elections is not even mentioned. If the legislature had

intended to prevent holding elections, it could have plainly said so. There is nothing particularly complicated about declaring that local governments cannot hold elections on certain types of measures. The fact of the matter is, the legislature said nothing of the sort.

Especially when the text of ORS 659.165(1) is read in conjunction with subsection (2) of the same statute, it is clear that the legislature did not intend to prohibit the conduct of elections. Subsection (2) provides for judicial declaration of the invalidity of a measure if a political subdivision "has enacted" the measure in violation of the statute. Thus, relief under subsection (2) may be obtained only if a challenged measure has been enacted; that is, approved by the voters or local governing body. If, as plaintiff suggests, "enactment" means the act of casting ballots on a measure — whether or not the measure actually has been approved — then a person could bring suit in circuit court under subsection (2) to obtain a declaration that a measure that has been rejected by the voters is invalid. We are generally constrained to avoid an interpretation that would produce such an absurd and unreasonable result. 312 Or at 549.[1]

Moreover, to hold that the term "enactment" refers to the act of voting on a measure would imbue a term that has longstanding and common meaning with an entirely new and, frankly, strange definition. That also would be contrary to basic principles of statutory construction. *See* 312 Or at 549.

■ "Enactment" commonly refers to the final act that makes a measure law. *See, e.g., State v. Bergeron,* 235 La 879, 890, 106 So 2d 295 (1958); *Alliance, AFSCME/SEIU, AFL-CIO v. Secretary of Administration,* 413 Mass 377, 381-83, 597 NE2d 1012 (1992); *Stadle v. Battle Creek,* 346 Mich 64, 68-69, 77 NW2d 329 (1956); *SDDS, Inc. v. State,* 481 NW2d 270, 272 (SD 1992). *See also Webster's Third International*

---

[1] The dissent's argument on this point contradicts itself. On the one hand, the dissent agrees with plaintiff that the term "enactment" means the holding of an election, *regardless of the result of that election*. On the other hand, it says that there could be no action under subsection (2) to declare invalid a measure that has been rejected by the voters at an election. The reason, the dissent explains, is that subsection (2) "provides remedies only as to measures that have been enacted." If, however, "enactment" means the conduct of an election, regardless of outcome, then there has been "enactment" of the measure even though it has been rejected. The dissent never explains itself around that conundrum.

*Dictionary* 745 (unabridged 1976) (defining "enact" as "to perform the last act of legislation upon (a bill) that gives the validity of law"). It is not the mere act of voting on a measure. A simple example illustrates the point. Suppose "Measure X" were put to a vote of the people, and the results were 35,000 votes in favor and 75,000 votes against. Measure X has not, in any sense of the word, been "enacted." It has been voted on and rejected, nothing more.

Plaintiff's argument also is contrary to the manner in which the term "enactment" is used in the Oregon Constitution concerning the exercise of the initiative power. Article IV, section 1(2), provides that

"[t]he people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution *and enact or reject them at an election* independent of the Legislative Assembly." (Emphasis supplied.)

Thus, at an election, the voters may "enact or reject" a measure. The election itself is not enactment. A measure is not enacted until it has been approved — and not rejected — by the voters.

Finally, plaintiff's argument is at odds with the manner in which similar language has been interpreted and applied by the courts for many years. Both state and federal constitutions contain numerous provisions that prohibit legislative bodies from passing certain kinds of laws.[2] The courts have never held that those legislative bodies may be enjoined from voting on the prohibited laws. To the contrary, the courts consistently have held that such constitutional prohibitions establish only that the prohibited legislation, if approved, is invalid. *State ex rel. v. Newbry et al.*, 189 Or 691, 697, 222 P2d 737 (1950); *State ex rel. Carson v. Kozer*, 126 Or 641, 647-49, 270 P 513 (1928).

■ Even assuming, for the sake of argument, that ORS 659.165(1) prohibits the conducting of elections on offending proposed measures, we still must decide whether that legislation necessarily deprives the measure of its "municipal"

---

[2] Article I, section 8, of the Oregon Constitution, for example, provides that "[n]o law shall be passed restraining the free expression of opinion * * *." Similarly, Article I, section 21, provides that "[n]o *ex post facto* law, or law impairing the obligation of contracts shall ever be passed * * *." (Emphasis in original.)

character within the meaning of Article IV, section 1(5), for, it must be remembered, we are constrained under *Foster v. Clark, supra,* to confine our pre-enactment review to whether a measure is of the type authorized by the constitution. Plaintiff argues that, by preempting elections on the category of measures proposed, the legislature has effectively defined "municipal" to exclude that category of measures. We cannot accept that argument.

Article IV, section 1(5), is a constitutional reservation of power to the people. We are aware of no portion of Article IV, section 1(5), or any other part of the constitution for that matter, authorizing the legislature to define the scope of that reservation. It is a free-standing, self-executing source of the people's legislative authority. As we said in *Allison v. Washington County,* 24 Or App 571, 579, 548 P2d 188 (1976), whether a matter is subject to the initiative power reserved in Article IV, section 1(5), "presents solely a question of interpreting and applying Art IV, § 1 of the Oregon Constitution," not a question of whether the legislature has conditioned or qualified that constitutional right.

That the enactment of preempting legislation does not have the effect of withdrawing a matter from the scope of the people's constitutional initiative and referendum rights is borne out by the Supreme Court's decision in *Oregon AFL-CIO v. Weldon,* 256 Or 307, 473 P2d 664 (1970). In that case, the district attorney was asked to refuse to issue a ballot title for a local initiative measure on the ground that enactment of the measure would have the effect of amending contrary state law. The court held that the district attorney could not be prevented from placing the measure on the local ballot. Quoting from an earlier decision on the subject, *State ex rel Carson v. Koser, supra,* 126 Or at 647, the court said:

> "We have repeatedly held that the courts are without power to determine the validity of a proposed law or ordinance before its enactment. * * * '[T]he people alone are authorized to determine whether the proposed measure shall be enacted into law and if the measure when enacted is unconstitutional, then only have the courts power to declare it to be unconstitutional.' " 256 Or at 312.

Similarly, the Supreme Court stressed in *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *on recon* 284 Or

173, 586 P2d 765 (1978), that, even if a matter is subject to state preemption, it may nevertheless be the proper subject of the initiative and referendum power of Article IV, section 1(5). In that case, the cities of LaGrande and Astoria challenged a state statute that preempted local ordinances concerning certain retirement and insurance benefits for city police and fire fighters. The cities argued that the state statute infringed upon the limitation against legislating within the scope of local "home rule" authority under Article XI, section 2. The court ultimately held that the state statute did not violate the home rule provision. 281 Or at 156-57. In so holding, however, it said:

> "To forestall possible misunderstanding: These principles refer to the *limitation* on state legislation stated in article XI, section 2, not to the *powers* granted local communities and voters under that section and article IV, section 1(5)." 281 Or at 156 n 30. (Emphasis in original.)

On rehearing, the court again addressed the issue and said:

> "It deserves to be reemphasized that the terms of the granted powers [of Article IV, section 1(5)] and of the accompanying limitation [of Article XI, section 2] need not be and are not symmetrical. Much of the argument against these statutes has proceeded as though a constitutional grant of power to one level of government necessarily carries with it a corresponding withdrawal of power from the other. That this is not so has long been a truism with respect to the relationship between the powers of Congress and the states, and it is equally true of 'home rule' within a state. It is entirely possible to grant certain powers to local governments to act on their own initiative without at the same time limiting the powers of the state legislature. *Indeed, as a practical matter this is essential if local government is to have any authority to legislate on its own in matters in which the state could also act, for otherwise local powers would have to be narrowly confined in order to save room for potential state legislation." LaGrande/Astoria v. PERB*, 284 Or 173, 176, 586 P2d 765 (1978). (Emphasis supplied.)

*Yamhill County v. Dauenhauer*, 261 Or 154, 492 P2d 766 (1972), is not to the contrary. In that case, the voters of Yamhill County exercised a power specifically granted by statute to approve, by initiative, the issuance of bonds to build a bridge. When a group of voters subsequently attempted to

place a measure on the local ballot to rescind that approval, the plaintiffs sought to enjoin the election. The court held that the election could be enjoined. It based its decision on the fact that the source of the voters' authority to approve the issuance of the bonds rested on a specific statute, which did not permit rescission of that approval. The court's explanation is important, because it emphasizes the limited nature of its holding:

> "Where the legislature grants to the citizens of a county the power to approve or reject certain expenditures, that power is exhausted when the expenditure is once approved, absent express statutory authority to the contrary. The power of the citizens of a county to vote on the issuance of bonds for county purposes is derived from ORS 287.054-287.074. Having once exercised the power granted to them by the statute, the voters of Yamhill County have no power to rescind that approval in a later vote." 261 Or at 156. (Footnote omitted.)

There is no mention of Article IV, section 1(5), in the court's opinion. There certainly is no suggestion that the legislature somehow limited the scope of the reservation of the people's authority under Article IV, section 1(5). All the court said is that, *"[w]here the legislature* grants to the citizens of a county the power to approve or reject certain expenditures," that statute can define the scope of that right. 261 Or at 156. (Emphasis supplied.) That is not so in this case, in which the source of the people's right to vote on the proposed measure is Article IV, section 1(5).

In short, there is no basis for concluding that, because the legislature enacted ORS 659.165(1), the proposed measure is not "municipal legislation" within the meaning of Article IV, section 1(5).

Plaintiff also argues that, regardless of ORS 659.165(1), the subject of the proposed ballot measure is, by its very nature, not "municipal," because it concerns the civil rights of the state's citizens, and that is a matter of statewide, not local, concern. To address that argument, it is necessary to establish what is meant by "municipal" legislation within the meaning of Article IV, section 1(5).

The text of Article IV, section 1(5), includes a very expansive reservation of municipal authority. It reserves to the voters of each municipality and district the powers of

initiative and referendum "as to *all local, special and municipal legislation of every character* in or for their municipality or district." (Emphasis supplied.)

In *Allison v. Washington County, supra,* we directly addressed the scope of that broad reservation of authority.[3] In that case, a group of voters attempted to have referred to a vote of the electors an amendment to the comprehensive plan that had been approved by the county commissioners. We held that the proposed referendum was properly "municipal legislation" within the meaning of Article IV, section 1(5). 24 Or App at 588.

We based that holding on the application of a test that required a determination of whether the subject of the proposed measure "is a matter of predominantly state-wide or predominantly local concern." 24 Or App at 584. We emphasized that there nearly always will be areas of overlap between the statewide and local character of a particular measure, and that merely because a given subject may be a proper subject of statewide legislation does not mean that the same subject is not also properly the subject of local legislation. The matter, we said, is incapable of resolution on the basis of a simple " 'either-or' approach." 24 Or App at 583. Instead, we look at the "predominant" character of the proposed measure to determine whether it falls within the reservation of legislative authority found in Article IV, section 1(5). 24 Or App at 584-85.

Applying the test of *Allison v. Washington County, supra,* to the measure in this case, we note that its first section says that

"[t]he City of Klamath Falls, including the Council and the elected or appointed officers, shall not make, pass, adopt or enforce any ordinance, rule, regulation, policy or resolution that extends minority status, affirmative action, quotas,

---

[3] In deciding *Allison* we referred to, and quoted portions of, *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962). In that case, the court held that a state statute preempting local legislation concerning the employment and discharge of city fire fighters violated the home rule provisions of Article XI, section 2. 231 Or at 488. The Supreme Court later overruled *Heinig* in *LaGrande/Astoria v. PERB,* 281 Or 137, 146-47, 576 P2d 1204 (1978). However, we do not see that as any indication that the analysis of Article IV, section 1(5), in *Allison* should not continue to be applied, particularly in the light of the court's emphasis upon the distinctions between the analyses required under the home rule and initiative provisions.

special class status or any similar concepts based on homosexuality * * *."

That provision, by its terms, defines what the city, the city council and the elected or appointed officers of the city may or may not do concerning homosexual persons.

Similarly, the second section of the proposed measure says that

"[c]ity funds shall not be expended to promote homosex-. uality or express approval of homosexual behavior."

That section, too, establishes a limitation on the uses to which municipal funds may be applied. Both sections establish self-imposed limits on the authority of the municipal government. Indeed, the proposed measure itself makes clear that it is to be considered "an explicit and necessary restriction and limitation upon the authority of the Council."

The remaining sections provide that the first two sections are not to be considered abrogations of the civil rights of any citizens, and that the city retains authority to prohibit discrimination in employment based on factors not directly related to employment. There is also a severability clause.

We conclude that the subject of the proposed measure is its limitations on the authority of the City of Klamath Falls and its employees.[4] That is intrinsically and predominantly a municipal concern.

Plaintiff insists that the proposed measure is, in fact, predominantly of statewide concern, because it implicates the civil rights of its citizens. According to plaintiff, "[s]overeign interest dictates that all citizens of Oregon are treated fairly and equally." She argues that "the state must ensure meaningful access to the political process for all of its citizens," and that "[t]here must be uniform state law securing civil rights for all."

---

· [4] In reaching that conclusion concerning the subject of the proposed measure, we note that, in *Lowe v. Keisling*, 130 Or App 1, 10, 882 P2d 91 (1994), we similarly characterized a proposed statewide initiative measure "as dealing with and defining limitations on how state and local governments in Oregon can treat homosexuals and the subject of homosexuality."

Plaintiff certainly is correct that the state has an interest in all of the matters she raises. That does not demonstrate, however, that the subject of the proposed measure loses its "municipal" character within the meaning of the constitution. To repeat what we said in *Allison v. Washington County, supra,* merely because a state legitimately may require uniform law on a matter does not mean that it is not "municipal" within the meaning of Article IV, section 1(5). 24 Or App at 582.

Moreover, the implications of plaintiff's argument are troublesome. If a proposed measure is not "municipal" in character because it concerns the civil rights of the state's citizens, then it follows that any proposed measure that *creates* or *guarantees* civil rights within a municipality is not a proper subject of the local initiative and referendum power. We are reluctant to hold that it is beyond the power of a municipality to enact, by initiative, civil rights protections for city employees.

It bears noting that we see no distinction in the foregoing example between a local initiative that creates a right and a local initiative that extinguishes one. In either case, the subject of the measure is the same, and its municipal character is unaltered. The Supreme Court squarely disposed of that issue in *Ex Parte Kerby*, 103 Or 612, 205 P 279 (1922), in which the petitioner challenged the authority of the people to repeal, by initiative, a prohibition against the death penalty. According to the petitioner, although the people may have the power to amend the constitution, by initiative, to prohibit the death penalty, they do not have the power to later repeal that prohibition. The Supreme Court rejected that argument:

> "Where, as in Oregon, the people have seen fit to enact a prohibition against inflicting the death penalty by amendment to the Constitution, it would be strange indeed, if by that act they had deprived themselves of the power to restore the death penalty by the same method, upon later discovery that the same was required by sound public policy." 103 Or at 618.

Likewise, in this case, it would be strange, indeed, that the people of a municipality had the authority to enact a measure

creating or guaranteeing certain rights, but not the authority to repeal that same enactment.

In conclusion, plaintiff has articulated no basis on which we can reverse the trial court's decision to certify the ballot title of the proposed measure. That measure, if approved by the voters, may well be unconstitutional. It may well be unenforceable. But it is within the scope of the initiative power reserved to the people under Article IV, section 1(5), of the Oregon Constitution.

Motion for reconsideration granted; former opinion withdrawn; affirmed.

**DEITS, J.,** dissenting.

I do not agree with the majority's conclusion that the election may be conducted consistently with ORS 659.165, and I therefore dissent.

ORS 659.165 provides:

"(1) A political subdivision of the state may not enact or enforce any charter provision, ordinance, resolution or policy granting special rights, privileges or treatment to any citizen or group of citizens on account of sexual orientation, or enact or enforce any charter provision, ordinance, resolution or policy that singles out citizens or groups of citizens on account of sexual orientation.

"(2) Any person who believes that a political subdivision has enacted or is enforcing a charter provision, ordinance, resolution or policy in violation of this section may bring an action in circuit court to have the charter provision, ordinance, resolution or policy declared invalid, for injunctive relief and for such other relief as the court may consider appropriate. The court shall award reasonable attorney fees and costs to a plaintiff who prevails in an action under this subsection."

The initial question is whether, in connection with local legislation that is proposed through the initiative, the term "enact" and like terms in the statute relate to the election itself or to some later event in the process, such as certification or the time that an adopted measure takes effect. The statute contains no definition of the pertinent terms, and the terms themselves are capable of more than one meaning. The apparent target of the statute is the process by which a

prohibited local law is or can be adopted. The uncertainty is at what specific point in the process the legislature intended to intervene. Arguably, this could be either before the election, only after there is an affirmative vote at an election, after the measure is certified or after it takes effect.

I believe that the context of the statute offers the best guide to its meaning. In my view, the context indicates that the term "enact" was meant to refer to the election process before the measure is voted upon. ORS 659.165(1) contains a dual prohibition. It proscribes enactment as well as enforcement. If enactment were not deemed to occur until the measure took effect, these two prohibitions would be redundant. Further, I think it is extremely unlikely that the legislature intended certification or other post-election ministerial events to be the prohibited acts, because these add nothing of material consequence to the earlier vote that they simply formalize.

Accordingly, I conclude that ORS 659.165(1) makes the election itself the proscribed event. Were the measure to pass, the result could not be given effect; were it to fail, there would also be nothing to take effect. It seems unlikely that the legislature would have intended to allow the election to proceed when, under the statute, its result could have no effect whether the measure passed or not. *See Heritage Enterprises v. City of Corvallis*, 71 Or App 581, 693 P2d 651, *aff'd* 300 Or 168, 708 P2d 601 (1985). Moreover, as we said in *Yamhill County v. Dauenhauer*, 6 Or App 422, 427, 487 P2d 1167 (1971), *aff'd* 261 Or 154, 492 P2d 766 (1972), concerning another proposed initiative measure that was contrary to state law:

> "If the instant initiative measure were allowed upon the ballot and it was then defeated by the voters, the same minority of the voters who proposed the first initiative could circulate other similar petitions for another election. This could go on ad infinitum, frustrating the will of the majority of county voters as well as that of the state legislature."

ORS 659.165(2) lends further contextual support to my conclusion. The remedy that it provides relates to measures that *have* been enacted. ORS 659.165(1), by contrast, states a *prospective* prohibition against enactment. If the legislature intended the prohibition against enactment in

ORS 659.165(1) to refer to some post-electoral event, it would have used the past tense, as it did in the following subsection.

For all of the above reasons, I interpret the phrase "may not enact" to mean that an election that could result in enactment may not be conducted. At least in connection with local laws proposed through the initiative process, the *election* is the event that ORS 659.165 proscribes.

The next question that must be answered is what role the courts may play, before the election, in carrying out the legislature's prohibition of it. A long line of Oregon appellate cases has developed the principle that some initiative and referendum measures, or aspects of them, are not properly subject to pre-election judicial review or intervention. In *Foster v. Clark*, 309 Or 464, 790 P2d 1 (1990), the Supreme Court reviewed the cases and attempted to define when pre-election review is permissible and when it is not. It said:

> "It is true, as those cases hold, that a court will not inquire into the substantive validity of a measure—*i.e.*, into the constitutionality, legality or effect of the measure's language—unless and until the measure is passed. To do otherwise would mean that the courts would on occasion be issuing an advisory opinion.

> "On the other hand, Oregon courts have inquired into whether matters extraneous to the language of the measure itself disqualify the measure from the ballot. * * * Despite compliance with proper procedures, courts will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot. *See, e.g., City of Eugene v. Roberts*, 305 Or 641, 756 P2d 630 (1988) (although otherwise qualifying, advisory question could not be placed on the ballot because it was not a 'measure'); *Yamhill County v. Dauenhauer*, 261 Or 154, 492 P2d 766 (1972), *aff'g* 6 Or App 422, 487 P2d 1167 (1971) (county initiative measure properly removed from ballot where effect would have been to overturn previous vote by same electorate on a fiscal matter); *Holmes v. Appling*, 237 Or 546, 392 P2d 636 (1964) ('proposed constitutional amendment' was in fact a new constitution, and therefore not entitled to be placed on the ballot)[.]

> "* * * * *

"We adhere to the more recent authorities, such as *Holmes v. Appling, supra,* as being the more clearly reasoned and stating the correct rule, which is: Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by Or Const Art I[,] §1(5) to be placed on the ballot. This means that a court may inquire into whether the measure is 'municipal legislation,' because that qualifying language is used in the constitution itself. On the other hand, a court may not inquire into general questions of constitutionality, such as whether the proposed measure, if enacted, would violate some completely different portion of the constitution." 309 Or at 469-71.

The court in *Foster* cited *Yamhill County v. Dauenhauer, supra,* as well as *Oregon AFL-CIO v. Weldon,* 256 Or 307, 473 P2d 664 (1970), with apparent approval. *See* 309 Or at 469 n 4. In *Weldon,* the court indicated that the challenger's assertion that the proposed local measure "would conflict with various portions of [state] statutes" was not reviewable, because "the courts are without power to determine the validity of a proposed law or ordinance before its enactment." 256 Or at 311-12. In *Dauenhauer,* the issue was whether a proposed initiative measure could be placed on the ballot. The measure proposed the "rescission" of a previous vote authorizing the construction of a bridge and the issuance of bonds to finance it. The court held that the measure could not be submitted to the voters and explained:

"The voters of a county have only such power as is granted to them by the legislature. * * * The power of the citizens of a county to vote on the issuance of bonds for county purposes is derived from ORS 287.054-287.074. Having once exercised the power granted to them by the statute, the voters of Yamhill County have no power to rescind that approval in a later vote. Without such power, the proposed initiative measure is improper insofar as it relates to the construction of the bridge[.]" 261 Or at 156.[1]

*See also Dan Gile and Assoc., Inc. v. McIver,* 113 Or App 1, 831 P2d 1024 (1992).

---

[1] I do not understand the relevant aspects of the Supreme Court's opinion or ours in *Dauenhauer* to turn on any distinction between city and county legislative powers or initiative rights. *See* 261 Or at 157 (McCallister, J., dissenting); 6 Or App at 427-28.

*Dauenhauer* and *Weldon* may *appear* to point in opposite directions as to whether the preemption of the subject of a proposed measure by or its inconsistency with state law is a matter of "effectiveness or legality" that is insulated from pre-election review, or one that relates to the legal sufficiency of the measure for the ballot and is reviewable. However, there is a difference between the two cases that accounts for the seeming disparity. As far as the Supreme Court's opinion indicates, the unreviewable issue in *Weldon* was simply whether the proposed local measure, if enacted, would be inconsistent *in its operation* with the statutes. In *Dauenhauer*, however, the problem went beyond that: The statutes, as the court construed them, did not allow the act of *adopting* the measure. This case is akin to *Dauenhauer* in that respect. ORS 659.165, by its express terms, prohibits the enactment of the local legislation it defines, as well as preempting the operation of the legislation.

A logical case can be made that state statutes that prohibit local enactments on a subject, as well as statutes that prohibit their enforcement only, make measures on the affected subjects improper ones for submission to the electorate through the local initiative and referendum process. Arguably, if the legislature has preempted and prohibited local legislation on a subject, a measure relating to it is neither "local" nor "municipal" legislation within the meaning of Article IV, section 1(5), and an initiative measure purporting to propose local legislation on that subject cannot qualify for the ballot under the rationale of *Foster v. Clark, supra*. However, it is unnecessary to consider here whether that analysis applies to elections on local measures that state law would prohibit localities only from enforcing; we need decide only whether that analysis applies to state statutes, like the one in this case and those in *Dauenhauer*, that forbid local governments from enacting the measures. I conclude that that is the proper analysis here; that the proposed initiative measure is not "local" or "municipal," because both the subject of it and the election on it are preempted by state law; that it is subject to pre-election review; and that it is not legally sufficient for the ballot.[2]

---

[2] The fact that the voters might reject the measure does not affect my conclusion. *See Yamhill County v. Dauenhauer, supra*, 6 Or App at 427; *see also Heritage*

It is important to emphasize that the fact that the proposed legislation takes the form of an initiative measure gives it no greater legal status than the same proposal would enjoy if it were made at a meeting of the city council. The initiative right of city voters does not extend beyond the legislative authority of the city itself, but is limited to local and municipal matters. The city has no authority to adopt legislation of the kind ORS 659.165 preempts and prohibits and, therefore, neither do its voters. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 286-87, 639 P2d 90 (1981).

Some of the reasoning in the majority opinion requires comment. Initially, its point that the statute says nothing express about "elections" is a straw man argument. As indicated in the preceding paragraph, the prohibition against "enactment" applies to all methods of legislating, whether by elected officials or popular vote. There was no need for the legislature to recite all of the ways in which legislation can be adopted; the word "enact" covers them all.

The second threshold problem with the majority's approach is that it fails to recognize that no previous Oregon case on which it relies has dealt with a state legislative prohibition on the *act* of local enactment. The only Oregon case that has dealt with that type of prohibition is *Yamhill County v. Dauenhauer, supra,* which, as discussed above, supports my position.

The majority also disagrees with my conclusion about what the legislature has said, and would hold that "enact" means some unspecified event that occurs after an election. In reaching that conclusion, the majority fails to adequately analyze the language and context of ORS 659.165 itself. If the word "enact" meant what the majority holds it does, it would be meaningless in the context of the words "or enforce" that immediately follow it. Nothing *can* be done with measures beyond the point of their adoption, by election or otherwise, except to enforce them or refuse to enforce

---

*Enterprises v. City of Corvallis, supra.* I do not suggest that the legislature may *define* the constitutional term "municipal legislation." However, the preemptive effect of a statute can affect whether particular matters are permissible subjects of municipal legislation.

them. Under the majority's reasoning, the first part of the disjunctive statutory prohibition would disappear.

Similarly, the words "enact or reject [the measure] at an election" in Article IV, section 1(2), of the constitution do not lend support to the majority opinion. The provision clearly ties "enactment" and "elections" together. The fact that the election could have the opposite result does not sever that tie.

The majority also posits that, if the statute is interpreted as I do, a person could bring an action under ORS 659.165(2) to have a defeated measure declared invalid. However, the statute clearly could have no such effect. It provides remedies only as to measures that have been enacted or are being enforced. As noted earlier, subsection (1) prohibits future events, while subsection (2) provides remedies for past ones. Finally, much of the majority's analysis seems to turn on the interrelationship of ORS 659.165 and Article IV, section 1(5). It is important to emphasize that no issue has been presented to us in this case concerning the constitutionality of ORS 659.165.

In *Heritage Enterprises v. City of Corvallis, supra,* 71 Or App at 585, Chief Judge Joseph said for the court that "[t]here is no such thing in this country as an *election* that must have a certain mandated result." (Emphasis in original.) Under the majority's reading of ORS 659.165(1), that is exactly what we would have here. For all of the above reasons, I dissent.

Richardson, C. J., and Riggs, J., join in this dissent.