Argued and submitted May 4, decision of the Court of Appeals and the amended final order of the circuit court affirmed August 24, 1995

Janet BOYTANO,
*Petitioner on Review,*

*v.*

Elisa FRITZ,
Election Officer of the City of Klamath Falls,
*Respondent on Review.*

(CC 93-500CV; CA A80515; SC S41923)

901 P2d 835

Charles F. Hinkle, of ACLU Foundation of Oregon, Inc., Portland, argued the cause and filed the petition for petitioner on review.

Jeffrey D. Ball, City Attorney, Klamath Falls, waived appearance for respondent on review.

Rives Kistler, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* Secretary of State. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

GRABER, J.

## GRABER, J.

Plaintiff Boytano seeks declaratory and injunctive relief, requesting that defendant Fritz, the elections officer of the City of Klamath Falls, be prevented from placing a proposed, but not yet qualified, initiative measure on the ballot. The trial court refused to grant the requested relief. The Court of Appeals affirmed. *Boytano v. Fritz*, 128 Or App 109, 875 P2d 476, *withdrawn on recons*, 131 Or App 466, 480, 886 P2d 31 (1994). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On January 25, 1993, a prospective petition for a proposed amendment to the Klamath Falls City Charter was filed with defendant, the elections officer of the City of Klamath Falls (city). That proposed amendment would preclude the city from passing or enforcing any ordinance "that extends minority status * * * based on homosexuality or which establishes any categorical provision such as 'sexual orientation.' " The full text of the proposed amendment is contained in the Appendix to this opinion.

Plaintiff brought a declaratory judgment action, seeking to enjoin the city's elections officer from placing the initiative measure on the ballot. Plaintiff argued to the circuit court (1) that the proposed initiative measure should not be placed on the ballot, because it is not the kind of measure as to which initiatives are authorized by Article IV, section 1(5), of the Oregon Constitution,[1] and (2) that the proposed measure is legally insufficient on constitutional and statutory grounds. In the alternative, plaintiff argued that the ballot title proposed by the city was unclear and should be modified. The trial court modified the ballot title and entered a judgment certifying the measure for the ballot, denying plaintiff her other requested relief. Plaintiff appealed.

---

[1] Article IV, section 1(5), of the Oregon Constitution, provides in part:

"The initiative and referendum powers reserved to the people * * * are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation."

The Court of Appeals concluded that no justiciable controversy existed between plaintiff and defendant because, "[a]t this writing, the sponsors of the measure have yet to collect the number of signatures required to place the measure on the ballot." *Boytano*, 128 Or App at 112. On reconsideration, the Court of Appeals, sitting *in banc*, withdrew that decision. 131 Or App at 469. The Court of Appeals first noted that, under this court's opinion in *Ellis v. Roberts*, 302 Or 6, 17, 725 P2d 886 (1986), "an elector who seeks a court ruling that an initiative measure should not be placed on the ballot need not wait until all the required signatures have been gathered and the measure has qualified for the ballot." 131 Or App at 469. The Court of Appeals then rejected plaintiff's argument that the proposed measure is not a proper subject of a local initiative election under Article IV, section 1(5), of the Oregon Constitution. *Id.* at 470-80. This court allowed review, and we now affirm.

## II. JUSTICIABLE CONTROVERSY

In *Foster v. Clark*, 309 Or 464, 469, 790 P2d 1 (1990), this court explained that

> "a court will not inquire into the substantive validity of a measure — *i.e.*, into the constitutionality, legality or effect of the measure's language — unless and until the measure is passed. To do otherwise would mean that the courts would on occasion be issuing an advisory opinion."

Nonetheless, the court recognized that there are some circumstances in which "Oregon courts have inquired into whether matters extraneous to the language of the measure itself disqualify the measure from the ballot." *Ibid.*

In *Foster*, the court discussed two situations in which "matters extraneous to the language of the measure itself" disqualify that measure from the ballot. The first occurs when a measure is flawed because of some procedural shortcoming, such as an inadequate number of qualifying signatures to place the measure on the ballot. *Ibid.* The second situation occurs when, "[d]espite compliance with proper procedures, * * * the measure is legally insufficient to qualify for that ballot." *Ibid.* The court concluded that the proposed measure in that case was legally insufficient to qualify for the ballot, because it did not involve "municipal legislation" and,

thus, was not "one of the type authorized by [Oregon Constitution, Article I, section 1(5)]." *Id.* at 471-75.

This case presents another situation in which "matters extraneous to the language of the measure itself" are asserted to disqualify the measure from the ballot. Here, plaintiff argues among other things, that ORS 659.165 and Article IV, section 1(5), of the Oregon Constitution, preclude a vote on the proposed initiative petition, because it is not a proper subject for a local initiative measure. That challenge does not depend on the substantive validity of the proposed initiative petition. Accordingly, as our discussion of *Foster* shows, that argument "is a proper one for judicial scrutiny." *Id.* at 471.

Further support for the conclusion that this case presents a justiciable controversy is found in *State ex rel Fidanque v. Paulus*, 297 Or 711, 688 P2d 1303 (1984). In *Fidanque*, the plaintiff-relators alleged that the Secretary of State had breached her constitutional duty by certifying a prospective petition and allocating to it a ballot number in violation of the single-issue requirement of Article IV, section 1(2)(d), of the Oregon Constitution. The plaintiff-relators brought their challenge after the signatures had been gathered and after this court had certified a ballot title. 297 Or at 713. This court dismissed the writ of mandamus, holding that the challenge came too late in the process. *Id.* at 717-19. The court stated: "It is in approving a prospective petition which did not comply with the alleged requirements of Article IV, section 1, that the Secretary of State's authority under the constitution and statutes first would be exceeded and her duty breached." *Id.* at 715. In a footnote, the court explained:

> "One can visualize a time line in the submission procedure involved in the initiative process. No initiative petition may be circulated without the approval of the Secretary of State and the issuance of a ballot title. *Approval by the Secretary of State is conditioned not only upon verification of the required number of sponsor signatures, but also upon determination that the use of the initiative power in each case is authorized by the Constitution. Once this initial determination is made, that decision is then reviewable by the courts.* It is at this point that the process of submitting initiated measures to the people begins. If the Secretary of State has made an error in determining the extent of her

constitutional authority, the clock for timeliness of review begins ticking at this initial step.

"The next step is issuance of the ballot title. This is the second discrete step in the submission process. That decision is also reviewable by the court and any challenge must be made within 20 days or the right to challenge is lost. * * *

"The third discrete step in the submission process is the verification of signatures and certification of the measure for the ballot. Again, but not until the action is taken by the Secretary of State, the process is open for court review of the action taken.

"Therefore, in the submission process, a series of decisions must be made. *As each decision is made, it becomes susceptible to challenge.*" *Id.* at 715-16 n 5 (emphasis added; citations omitted).

In this case, defendant, as the elections officer for the City of Klamath Falls, is responsible for receiving and processing an initiative petition, ORS 250.265, for "authoriz-[ing] the circulation of the petition," ORS 250.275(1), for accepting the petition for signature verification, ORS 250.315(1), and for "fil[ing] the initiated measure with the city governing body" for its approval or rejection, ORS 250.325(1). *See* City Charter, City of Klamath Falls, section 26 (with exception not relevant here, "the general laws of the state shall apply to the conduct of all City elections"). Pursuant to ORS 250.275(2), she forwarded the petition in controversy to the City Attorney for preparation of a ballot title. The City Attorney prepared a title, for use in gathering signatures that would place the petition on the ballot. At that point, defendant, as well as the City Attorney, implicitly made a determination that the proposed measure is a proper one for the ballot. Under the principles discussed in *Fidanque*, that determination is susceptible to challenge in the courts.

We hold that this case presents a justiciable controversy.

### III. ORS 659.165(1)

#### A. *Preservation of Issue*

In the trial court, plaintiff argued, in part, that the proposed initiative petition should not be placed on the ballot, because it did not concern "municipal legislation" and thus

was not of the type authorized to be placed on the ballot under Article IV, section 1(5), of the Oregon Constitution. The trial court issued a letter opinion on April 8, 1993, dismissing plaintiff's Article IV, section 1(5), challenge, and a letter of clarification on May 13, 1993. On June 17, 1993, the trial court entered its amended final order certifying the ballot title. Plaintiff filed a timely notice of appeal to the Court of Appeals on July 12, 1993. ORS 659.165 became effective on August 2, 1993, after the trial court entered its amended final order.

Plaintiff's opening brief was filed in the Court of Appeals on January 11, 1994. In that brief, plaintiff raised, for the first time, the argument that ORS 659.165(1) precludes local elections on initiatives like the one at issue in this case. Plaintiff did not, and could not, raise her ORS 659.165(1) argument to the trial court, because that statute became effective after the Court of Appeals acquired jurisdiction of the case.

Plaintiff's inability to raise her statutory claim at trial did not preclude her from raising that argument before the Court of Appeals, or here. For purposes of preserving an alleged error, raising an *issue* at trial ordinarily is essential, identifying a *source* for a claimed position is less so, and making a particular *argument* is least so. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). At trial, plaintiff met that preservation of error standard when she raised the *issue* whether the initiative petition was a proper one for the ballot; she could not, at that time, identify the statutory *source*, or make the particular *argument* now before us, because that source and argument did not exist. However, as stated in *Hitz*, "when a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision." *Ibid. See also Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990) ("This court decides cases upon sub-constitutional grounds, where available, even though litigants argue only constitutional errors.").

For the foregoing reasons, we conclude that we may consider plaintiff's argument that ORS 659.165(1) precludes a vote on the proposed initiative measure.

B. *Interpreting ORS 659.165(1).*

■    ORS 659.165 provides:

"(1)   A political subdivision of the state may not enact or enforce any charter provision, ordinance, resolution or policy granting special rights, privileges or treatment to any citizen or group of citizens on account of sexual orientation, or enact or enforce any charter provision, ordinance, resolution or policy that singles out citizens or groups of citizens on account of sexual orientation.

"(2)   Any person who believes that a political subdivision has enacted or is enforcing a charter provision, ordinance, resolution or policy in violation of this section may bring an action in circuit court to have the charter provision, ordinance, resolution or policy declared invalid, for injunctive relief and for such other relief as the court may consider appropriate. The court shall award reasonable attorney fees and costs to a plaintiff who prevails in an action under this subsection."

Plaintiff asserts that, because ORS 659.165(1) prohibits a political subdivision from enacting and enforcing any charter provision concerning treatment of citizens based on sexual orientation, it necessarily prohibits *elections* on initiative petitions that single out people on the basis of sexual orientation.[2] That argument depends in the present case on the interpretation of the word "enact," as it is used in ORS 659.165(1).

Plaintiff argues that the word "enact" in ORS 659.165(1) "prohibits local governments from voting on the measure." According to plaintiff, enactment of an initiative measure refers to a process that incorporates voting, rather than to a final action after voting.

■ ■    In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The first level of analysis is to examine the text and context of the statute. *Id.* at 610-11. If the legislature's

---

[2] The proposed initiative petition, on its face, singles out people and groups of people based on sexual orientation and thus falls within the reach of the substantive provisions of ORS 659.165(1). No party before this court argues otherwise.

intent is clear from those inquiries, further inquiry is unnecessary. *Id.* at 611.

"Enact" commonly means, as pertinent,

"to establish by legal and authoritative act : make into a law; *esp* : to perform the last act of legislation upon (a bill) that gives the validity of law[.]" *Webster's Third New Int'l Dictionary*, 745 (unabridged ed 1993).

Under that definition, an initiative measure is "enacted" after a vote, when an elections officer tabulates the votes and certifies that a majority of voters approved the proposed measure. An initiative measure is not "made into a law" until it has been approved by the voters; therefore, it is not "enacted" if (for example) it is voted on, but fails to win approval from the electorate. Moreover, "the last act of legislation" with respect to an initiative measure is the majority's approval of the measure at an election or, perhaps, certification of that election result. Thus, voting and enactment are not synonymous; voting precedes enactment and is necessary to it, but enactment does not occur every time a vote has occurred.

The context of ORS 659.165(1) confirms that meaning. The context of ORS 659.165 includes the state constitutional provisions that address the use of initiative and referendum powers reserved to the people of Oregon, because ORS 659.165 addresses types of initiatives and referenda that may not be enacted or enforced.

Article IV, section 1(2)(a), of the Oregon Constitution, provides:

"The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and *enact or reject them at an election* independently of the Legislative Assembly." (Emphasis added.)[3]

Because voters may "enact or reject" a measure at an election, a measure is not enacted until it has been approved, not rejected, by the voters. Therefore, "enact" does not mean the

---

[3] Article IV, section 1(2)(a), is relevant, because Article IV, section 1(5), reserves to "the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district" the initiative and referendum powers reserved to the people in Article IV, section 1(2)(a).

process of voting, as distinct from the result of voting. Moreover, Article IV, section 1(4)(d), provides that "an initiative or referendum measure becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon." In that section, the term "enact" is used as a synonym for approval by a majority of the votes cast. Again, voting precedes enactment and is necessary to it, but enactment does not occur every time a vote takes place.

After our review of the text and context, we conclude that ORS 659.165(1) is not intended to prevent local elections on initiative petitions such as the one at issue in this case.[4]

## IV. ARTICLE IV, SECTION 1(5), OF THE OREGON CONSTITUTION

■ Because plaintiff cannot obtain the relief that she requested based on statutory grounds, we turn to her argument that the proposed initiative measure should not be placed on the ballot, because it is not the kind of measure as to which initiatives are authorized by Article IV, section 1(5), of the Oregon Constitution, quoted above at note 1.

Plaintiff argues specifically that the proposed initiative measure is not a subject of "municipal legislation" because, by enacting ORS 695.165, the legislature made the subject of that measure a matter of statewide, and therefore not "municipal," concern. Plaintiff asserts that, because ORS 659.165 establishes a statewide policy concerning laws that single out citizens on the basis of sexual orientation, the legislature is "simply preempting the field." According to plaintiff, ORS 659.165 thereby reserves to the state the exclusive power to act in that area.

Plaintiff relies on this court's decision in *La Grande/ Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *aff'd on rehearing*, 284 Or 173, 586 P2d 765 (1978), to support her argument. In *La Grande/Astoria*, two cities brought declaratory judgment proceedings to challenge the constitutionality of state statutes that required the cities to provide a minimum level of life insurance and retirement benefits to some city

---

[4] We need not, and do not, decide whether the proposed initiative measure, if it were to pass, could be treated as an enacted law or enforced. Neither do we decide whether ORS 659.165 is constitutional.

employees. The cities argued, in part, that that statute violated Article IV, section 1(5), because "by requiring [the cities] to provide police officers and firemen with retirement and insurance benefits the legislature has invaded a domain reserved to local discretion by the Oregon Constitution." 281 Or at 139. The court held that the statues were constitutional. 281 Or at 157, 284 Or at 186.

In reaching that conclusion, the court made the following statement, on which plaintiff relies heavily:

> "[A] general law addressed primarily to substantive social, economic, or other regulatory objectives of the state prevails over *contrary* policies preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form." 281 Or at 156 (emphasis added).

Plaintiff argues that ORS 659.165 addresses the "substantive social * * * objectives of the state" and, therefore, that it "prevails over contrary policies preferred by some local governments."

In this case, our discussion above disposes of plaintiff's argument. We have determined that, when the legislature enacted ORS 659.165, it did *not* intend to preclude local *elections* on initiative measures such as the one at issue. Therefore, a local government election on an initiative measure such as the one at issue is not "contrary" to ORS 659.165, the general law adopted by the state legislature. Plaintiff's reliance on *La Grande/Astoria* is misplaced.[5]

The decision of the Court of Appeals and the amended final order of the circuit court are affirmed.

---

[5] As noted in note 4, above, enforcement is not an issue here.

# APPENDIX

## The proposed amendment provides:

"(a) The City of Klamath Falls, including its Council and elected or appointed officers, shall not make, pass, adopt, or enforce any ordinance, rule, regulation, policy or resolution that extends minority status, affirmative action, quotas, special class status, or any similar concepts, based on homosexuality or which establishes any categorical provision such as 'sexual orientation,' 'sexual preference,' or any similar provision which includes homosexuality.

"(b) City funds shall not be expended to promote homosexuality or express approval of homosexual behavior.

"(c) This Section shall not be construed to deny any Citizen, based on perceived or actual private lawful sexual practices, any City services, licenses, or approvals otherwise due or available.

"(d) This Section shall not be construed to limit public libraries from providing materials for adults which address homosexuality.

"(e) Subsection (a) of this Section shall not nullify or be construed to nullify any city, state, or federal civil rights protections based on race, religion, color, sex, marital status, familial status, national origin, age or disability. Neither shall Subsection (a) be construed to abrogate, abridge, impede, or otherwise diminish the holding, enjoyment, or exercise of any rights guaranteed to Citizens by the Constitution of the State of Oregon or the Constitution of the United States.

"(f) Subsection (a) of this Section shall not be construed to forbid the adoption of provisions prohibiting employment decisions based on factors not directly related to employment. If such a provision is adopted, it is the intent of the People that lawful private sexual behavior, or rumor, perception, or knowledge of a person's lawful private sexual behavior, are factors not directly related to employment. If such a provision is adopted, it is the intent of the People that personal expression, conversation or any other free expression concerning private lawful sexual behavior shall also be considered factors not directly related to employment, unless such actions disrupt the workplace.

"(g) This Section shall be an explicit and necessary restriction and limitation upon the authority of the Council.

"(h) It shall be considered that it is the intent of the People

in enacting this Section that if any part thereof is held unconstitutional by a court of competent jurisdiction, the remaining parts shall be held in full force and effect. This Section shall be in all parts self-executing.''